39 So.2d 703

## WILLIAMS v. STATE.

### 7 Div. 938.

Court of Appeals of Alabama.
March 8, 1949.

Rehearing Denied March 29, 1949.

Chas. Douglas, of Anniston, for appellant.

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment in this case charged the defendant, (appellant) with the offense of murder in the first degree. Specifically, that she "unlawfully and with malice aforethought, killed Walter Williams by stabbing or cutting him with a knife." (Formal parts omitted.)

The trial resulted in the conviction of the accused of the offense of murder in the second degree, and the jury fixed her punishment at ten years imprisonment. The court duly adjudged the defendant guilty, and in accordance with the verdict, sentenced her to imprisonment in the penitentiary for a period of ten years. From said judgment of conviction this appeal was taken.

It appears from the record, the deceased named in the indictment was the husband of the defendant. It also appears there is no dispute or conflict that the defendant did kill the deceased by stabbing or cutting him with a knife.

The facts of the killing are in effect tacitly agreed upon, and are as follows:

The difficulty between husband and wife, and the infliction of mortal wounds was near the noon hour. City officers Edson Laney and Frank Crow were on the scene right after the difficulty. Edson Laney testified on direct examination in substance, that he had a casual acquaintance with Walter Williams; that he and Officer Frank Crow went to the place of the difficulty, 19 Barber Terrace, Anniston, Calhoun County, Alabama; that they investigated the case; that it was about noon; that Walter Williams was living when they got there; that, to the best of his recollection, this happened on July 13; that they found Walter Williams lying on the floor of his house, number 19; he had nine different wounds on his left side, left arm, and his ribs; he was bleeding quite a bit; that he saw him the following morning at the hospital, and tried to question him, but he could only whisper; that he could not

understand what he was saying; that he saw Williams the day following at Lucius Funeral Home, he was dead; that he and officer Crow saw the defendant, Rosa Lee Williams there with Walter Williams; that he asked her who cut that man.

"She said that she did it. Officer Crow asked her: 'Where is the knife,' and she reached over on an ice box or hot water heater and got it. She said that is what she cut him with. I do not know whether the knife was open or closed. At that time, we arrested Rosa Lee Williams, the defendant."

"Later in the day, she made a statement. It was at the City Hall, and Officer Crow and Captain Cannon and I were present. I took her statement down in writing. At that time we did not threaten the defendant nor offer her any hope of reward to make that statement."

The statement was offered in evidence as State's Exhibit A; the defendant objected to it, the objection was overruled, and defendant excepted.

The statement is as follows:

"Statement of Rosa Lee Williams

Anniston, Ala.

"Maiden Name 'Rosa Lee Little.'

July 13, 1946.

"I, Rosa Lee Williams, do make the following statement to City Detectives, Capt. Thos. A. Cannon, Frank Crow and Edson Laney. I have not been threatened in anyway and I have not been offered any hope of reward to cause me to make this statement and that anything I might say can be used for or against me in any Court in the United States.

"Walter left the house about 8:00 A.M., July 13, 1946, and was gone about two hours. He came back in a car with several other men. They were all drinking. They got out and came in my house. They stayed there about 15 or 20 minutes. Walter ask me to go for a ride with them. I told Walter that I didn't feel like going so he snatched my dress and tore all the buttons off so I told him to go and leave me alone that I didn't feel like fighting. He then told me to him give the money that he had gave me that he was going home. I

gave him the money $6.00 and they all got into the car and left.

"They were gone about three hours this time. They came back in the same car. They came back with women in the car and stopped next door at #21 Barber Terrace.

"Walter sent a man over for me asking me to go over to #21. I told him, I wasn't coming over because Anne Pearl wasn't at home 'The lady of the house,' I didn't go but I could hear them dancing. They were there for about two hours and I saw them leave but Walter didn't go. He came on in the house clowning around and said, I guess you have been where you wanted to go. I told him that I hadn't been anywhere. He said well, if you haven't, I have and there is nothing you can do about. I told him there was nothing I wanted to do about it for him to go ahead and have his fun. Then he started cussing. He said this is what you want as he pitched his knife to me. I was sitting on the couch, got up and went to the sink. He followed me and told me that he didn't believe I would use it so I opened the knife and started cutting him. I stabbed him in the upper chest on the left side, left arm and side. He then set down on the couch and rolled off on the floor. I told Daisy Crowder to go and call an ambulance. I then remained at home until detectives Crow and Laney came for me. Before we left the ambulance came and took Walter away to the hospital.

"The above statement has been read to me by detective Crow and it is true and correct to the best of my knowledge.

        "Rosie Lee William
"Edson W. Laney
"Fr Crow
"Thos A Cannon."

Other than the principals, i. e. the deceased and the defendant, there were no eye witnesses as to the homicide. The defendant's statement as to the attending facts and circumstances of the killing was shown to be wholly and fully voluntary. Full and proper predicate for her admission as to the killing was properly laid, and authorized the court in allowing in evidence her written confession. The defendant also testified in her own behalf, and it clearly appears there was slight, if any, material conflict between her oral testimony and her written confession. Her own testimony, and also said written confession, tended to show that the homicide complained of was unlawful, and it was the province of the jury to determine the degree of the homicide, and to fix the punishment, and under the undisputed facts, the jury was amply justified in returning the verdict, supra, and in assessing the punishment of imprisonment for a period of ten years. The defendant in testifying stated that she was in no manner hurt or injured in the fight with her husband, that "he never hit her or struck her."

There is no phase of this case which entitled the defendant to a directed verdict; hence the motion of the defendant to exclude the testimony was properly overruled. So also there was no error in the refusal of the court to give the two written charges, each of which was affirmative in their nature.

Pending the trial several exceptions were reserved to the court's rulings upon the admission and rejection of the evidence. Each of said exceptions has had our careful and attentive consideration. In none of them does error of a prejudicial nature appear. The questions involved are simple in their nature, and in one instance only need to be discussed. Said question is as follows: Upon cross examination of defendant, the Solicitor asked her, "Have you ever been convicted for assault with a knife." To which question the defendant stated, "We object to that." The court overruled the objection and defendant excepted. There was no response to the question by the witness. The Solicitor then asked the following question: "Have you ever been convicted for assaulting anyone with a knife." No objection by defendant was interposed as to this last question. The witness answered, "Yes." No exception at that time was reserved. But pretermitting the manner in which the objection, if any, was made, the question asked was not subject to the general objection made to it; for while it was capable of eliciting evidence for conviction of an offense which under the statute did not go

to the competency or credibility of the witness, it was also capable of eliciting evidence which did go to her competency or credibility. The objection to the question, therefore, should have been specific, limiting the inquiry, to evidence of the latter class. Castleberry v. State, 135 Ala. 24, 27, 33 So. 431.

The motion for a new trial was based upon the same several insistences which arose upon the main trial. The motion was overruled without error.

No error of a reversible nature appearing, the judgment of conviction from which this appeal was taken will stand affirmed.

Affirmed.