148 So.2d 253

**Joe W. HACKMAN**

v.

**STATE.**

**6 Div. 906.**

Court of Appeals of Alabama.

Dec. 11, 1962.

---

R. G. Redden and G. H. Downing, Vernon, for appellant.

MacDonald Gallion, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Roy E. Hicks, Legal Research Aide, for the State.

JOHNSON, Judge.

Joe W. Hackman appeals from a conviction of murder in the second degree after a trial by jury on an indictment for murder in the first degree.

In the brief of the appellant, it is argued that the verdict of the jury is not sustained by the evidence and is contrary to the testimony in the case. We have carefully read the transcript of the evidence which we here summarize.

It was agreed between the parties that a shotgun wound caused the death of the deceased, John Lee Hackman, brother of the defendant. Another brother, Irving Junior Hackman, was an eye witness to the fatal shooting. As the first witness called by the State of Alabama, Irving testified that he and his two brothers were in the yard of their parents' home in Sulligent, Lamar County, Alabama, at the time of the shooting.

Irving's testimony revealed the following events leading up to the fratricide. The witness stated that he lived with his parents but that the deceased and the defendant lived in separate homes several hundred feet from their parents' home. Their aunt lived across the street from their parents' home. About forty-five minutes before the shooting, Irving and John Lee went to the aunt's home, at her request, to get Joe who was sleeping in a chair of her house. They took him to John Lee's car, but he got out and went into the parents' house. Irving was in the yard while Joe was in the house, but John Lee left the area. Joe stayed in the house about fifteen minutes and then left. Irving testified that he heard their mother tell Joe to go home because his wife was sick, and that he heard Joe tell the mother that he was going home but was coming back. About a half hour after leaving his parents' house, Joe returned via a path carrying his twelve gauge shotgun. Irving was then under a porch getting some coal. About that time "Johnnie Lee rolled up" in his car and stopped and got out. He started toward the house and said, "Joe, what you going to do with that gun?" Joe replied, "I'm going to kill some son of a bitch today". It appears from the evidence that during this colloquy John Lee was standing next to the porch near Irving and that Joe was about twelve or thirteen feet away near a chinaberry sprout. Irving testified that Joe fired while Joe and John Lee were scuffling over the gun. At this point the state claimed surprise because, as the solicitor informed the court, in prior statements to him and before the grand jury, the witness, Irving, had not mentioned that John Lee ever touched the gun. The court properly permitted the State to stand in the position of surprise for the reason given. Further examination of Irving elicited the

testimony that John Lee told Joe to put the gun up and then grabbed it and jerked it up to his own head just before it went off. Irving also testified that there was no trouble between John Lee and Joe.

After laying a proper predicate (to which the defendant objected), Sheriff Barnes testified as to a statement made by the defendant at the jail in his presence and in the presence of Deputy Northam, the Solicitor, and possibly the Deputy Solicitor. In substance, he testified that the defendant said that on the day of the shooting, he had bought a gallon of whiskey from which he drank about a pint before throwing away the rest when he saw a car approaching him along the road upon which he was walking, that he then went to his aunt's house where he fell asleep and where he was awakened by John Lee and Irving, that he then went to the home of his mother with whom he argued, that upon leaving the mother's house he got his gun because he was afraid to walk without it, loaded it and returned to his mother's yard on his way to his aunt's house to retrieve three packs of cigarettes.

The third and final witness was still another brother, Napoleon Hackman, who was in his car with Joe at the time of Joe's arrest. He testified that he did not smell any intoxicating beverages on Joe's breath and that Joe had told him that he brought the gun because he thought he might see a rabbit on the way and kill it.

The State rested its case and the defense's motion for the general charge was properly overruled. The defense rested without direct examination of any witnesses.

 The trial court did not err in refusing appellant's request for the affirmative charge because the evidence here reviewed presents a question for the jury to determine concerning the guilt or innocence of the appellant. Ray v. State, 248 Ala. 425, 27 So.2d 872.

After examining appellant's motion for a new trial in the light of the entire record, we conclude that such motion is with-out merit and the court committed no error in overruling the same.

 Looking upon the testimony relating to the conduct of the defendant in this case, we cannot escape a long prevailing presumption in the criminal jurisprudence of Alabama, to-wit: "Malice may be presumed from use of a deadly weapon unless circumstances of killing disprove malice." Wallace v. State, ante, p. 65, 124 So.2d 110; Dixon v. State, 128 Ala. 54, 29 So. 623.

From a careful review of the record we find no reason to disturb the verdict of the jury and the action of the lower court. Williams v. State, 34 Ala.App. 340, 39 So.2d 703; Moss v. State, 32 Ala.App. 250, 25 So.2d 700, cert. den. 247 Ala. 595, 25 So.2d 703.

It is, therefore, ordered that said cause be, and the same is hereby,

Affirmed.