Appellant entered a plea of guilty to violation of the Alabama Uniform Controlled Substances Act and received a sentence of four years. After sentence was entered, appellant filed a "petition for reconsideration" requesting the circuit judge to "reconsider the imposition of sentence and the denial of probation which was adjudicated on December 14, 1984." However, there was no motion for leave to withdraw appellant's guilty plea, nor a motion for new trial filed at the trial court level. The record contains an Ireland form which states that the applicable punishment is a term of imprisonment for not less than two years, nor more than 15 years and up to a $25,000 fine. In addition to having the appellant's signature, the Ireland form was signed by the appellant's attorney, as well as Honorable Lynwood Smith, Circuit Judge.
At arraignment on November 5, 1984, the transcript shows that the appellant stated that he understood the nature of the charges against him; that he had seen the indictment and discussed it with his attorney; that he had retained Mr. Sherman Powell to represent him and was satisfied with his services; that he did not wish the judge to read the indictment to him; and that he wished to withdraw his earlier plea of not guilty and enter a plea of guilty to the charges. Before the trial court judge would accept the appellant's plea, however, he asked the appellant several questions. This colloquy revealed that the appellant was 25 years old; that he had no physical or mental defect which would prevent him from hearing or understanding what the court was telling him; that he had discussed (with his attorney) the facts and circumstances that led to the indictment; and that his attorney had explained his constitutional rights to him.
The appellant further stated that, as to the Ireland form, he had inadvertently signed it twice (once where the trial court judge was to sign), and had discussed the form with his attorney. The appellant stated that he understood that he would be *Page 16 
entitled to all the constitutional rights as outlined in the form and that he would be waiving or giving up some of those constitutional rights by entering a plea of guilty. In explaining the offense to the appellant, the court stated that ". . . violating the Uniform Controlled Substances Act is a felony offense under the law of Alabama which includes punishment in the State penitentiary for not less than two years nor more than 15 years. Do you understand that?" The appellant stated that he understood the possible range of the sentence and further stated that there had been no promise to him or any member of his family; nor had there been any offer of a reward; nor had he been promised a light sentence, a particular sentence, or anything else in order to influence him to enter the plea of guilty.
Further, the Court stated as follows:
 "All right, I want to make sure you understand that if you entered a plea in just a moment, Mr. Johnson, you do that because you're guilty and in fact guilty and for no other reason because I am not going to agree to impose a sentence in accordance with the recommendation of the District Attorney."
The appellant stated "Yes, sir. I understand that." The State's attorney was then allowed to put into the record an outline of the evidence which would be presented on behalf of the State if the case were to go to trial, and the appellant admitted that the following was true:
 "Your Honor, the State of Alabama would expect the evidence to show that on February the 17, 1984, at 8:24 a.m. this defendant, along with a co-defendant, . . . met with an undercover officer on South Parkway here in Madison County, Alabama, at which time this defendant, along with his co-defendant, entered into negotiations with the undercover officer towards the undercover officer making a buy of approximately one-half pound of marijuana. At this particular time, officers from Madison County Sheriff's Department, Joe Wheeler and Ted Ward, effected an arrest of the defendant and recovered from him 1.8 pounds of marijuana."
The sentencing hearing took place on December 14, 1984, and the trial court initially noted that, pursuant to a plea of guilty, the court had previously adjudged the appellant "to be guilty of the crime of violating the Alabama Uniform Controlled Substances Act by means of possessing and selling marijuana." The appellant's attorney then questioned the appellant, and the following is a part of the record:
"Q Sammy, are you a dealer in drugs?
"A No, I am not.
"Q Do you use them?
"A No.
 "Q And on this occasion there was an undercover agent and a former classmate of yours in high school that you talked to several times and ended up, you brought this over there to sell him some; is that correct?
"A That's right.
 "Q And on this, you did as they asked. You brought it over here and met him at a parking lot and you were arrested for it?
"A Right.
 "Q Now, have you ever been involved in illegal drugs or trafficking in drugs or anything like that other than this occasion?
"A No."
After this, the appellant stated that he had "learned a lesson" and requested that he be placed on probation.
The trial court then personally examined the appellant as follows:
 "Q First, the state toxicologist who examined the plant material that was seized in this incident confirmed that it was marijuana and that it weighed 1.8 pounds. Now, that's a significant amount of marijuana. How did you come into possession of that quantity?
 "A Well, I know a friend and he knew somebody. I didn't know where it was at. *Page 17 
 "MR. POWELL [defense attorney]: Tell him how you got it and what you gave for it, Sammy.
 "A Well, I talked to that agent that night and so he told me to see what I could do and get back with him. Then I got on the phone and I called this friend, and he said he would see what he could do. And then that morning, when we got off, he had it for me and I got it from him. And he charged me something like $1,400 a pound for it, $1,400, something like that.
"Q So you paid him about $2,800?
"A Yes, sir.
"Q How did you come into that amount of money?
 "A Well, I had a little bit of money, but I didn't have much. And then I had this friend that I borrowed it from until we was to make the sale."
After this discussion with the trial court, the appellant was sentenced to four years in the State penitentiary.
The indictment which was returned by the Madison County Grand Jury was in two counts. The first count charged that the appellant did "unlawfully possess a controlled substance as listed in the Alabama Uniform Controlled Substances Act of 1971 . . . to-wit: marijuana." Count two of the indictment charged that the appellant did "unlawfully sell, furnish or give away a controlled substance as listed in the Alabama Uniform Controlled Substances Act of 1971 . . ., to-wit: marijuana." On November 5, 1984, the trial court entered an order which adjudged the appellant guilty of the offense of "violation of the Alabama Uniform Controlled Substances Act as charged in the indictment." In its order the court noted as follows:
 "Before accepting the plea of guilty to said charge, the Court proceeds to ascertain that the plea of guilty is intelligently and voluntarily made by the defendant; that the defendant understands the privilege against self incrimination; that the defendant understands his right to have a trial by a jury; that the defendant understands the right to be confronted in open Court by his accusers; that the defendant understands his right of cross-examination; that the defendant understands what the plea of guilty connotes, including the nature of the charge against him; and that the defendant fully understands the consequences of the plea of guilty, including the range of the sentence which can be imposed; and the Court being satisfied that all of the foregoing were fully and intelligently understood by the defendant and that the plea of guilty is freely and voluntarily made, the Court accepts the plea of guilty made by the defendant."
On December 14, 1984, the Court sentenced the defendant to four years in the State penitentiary and entered an order stating that he had been found "guilty by the Court of violation of the Alabama Uniform Substances Act as charged in the indictment." From said conviction and sentence, this appeal follows.
On appeal, appellant raises the following issues for review: (1) did the trial court err when it failed to properly advise the appellant as to the maximum and minimum sentences he would receive if he pleaded guilty? (2) Was the defendant properly informed of the nature of the offense charged? (3) Was the appellant's guilty plea voluntary or, in the alternative, was the appellant denied his rights under the Fifth Amendment where he was not advised of the critical elements of the charges against him?
In general, a review by this Court on appeal is limited in the following manner:
 "A review on appeal is limited to matters in which action by the trial court was invoked, except in case of ineradicable harm, and, then, the matter should be brought to the trial court's attention by a motion for a new trial. [Citations omitted.]" Hammonds v. State, 354 So.2d 345, 348 (Ala.Cr.App. 1978).
Even questions involving constitutional rights must be seasonably raised at the trial court level. Spradley v. State,414 So.2d 170, 172-173 (Ala.Cr.App. 1982); *Page 18 Smoke v. State, 347 So.2d 564 (Ala.Cr.App. 1977). In the present case, the issues which appellant now raises on appeal were never brought to the attention of the trial court and thus there is nothing for this Court to review. In a similar case involving an appeal from two convictions based upon guilty pleas entered for violations of the Alabama Uniform Controlled Substances Act, this Court, per Judge DeCarlo, concluded that the convictions and sentences should be affirmed for the following reason:
 "In the case at bar, appellant did not object or move to withdraw the guilty pleas after the sentences were pronounced by the Court. Consequently, there is no adverse action by the trial court for this Court to review. McCoy v. State, 392 So.2d 1287, 1288
(Ala.Cr.App. 1981)."
Here, as in McCoy, there was no objection made by the appellant nor was there any attempt made to withdraw the plea or move for a new trial after sentence was pronounced by the Court. Thus, there is no adverse ruling for this Court to consider.
The only indication in the record that appellant was dissatisfied with the trial court's procedure or sentence is a "Petition for Reconsideration," which was filed at the trial court level after the present appeal was filed.[1] Said petition, however, merely requests the Court to "reconsider the imposition of sentence in the denial of probation." Thus, none of the issues presented by this appeal were brought to the trial court's attention. At most, the trial court was merely asked to "reconsider" the denial of probation of the appellant. Even assuming that the petition could be considered as a timely filed motion for new trial, the fact that appellant thought that he "would get probation" if he entered a guilty plea would not be a sufficient ground to justify the granting of the motion. Dingler v. State, 408 So.2d 527, 528 (Ala.Cr.App. 1980), writ quashed, 408 So.2d 530 (Ala. 1981). Thus, the decision of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] The present notice of appeal was filed on December 14, 1984. The "Petition for Reconsideration" was filed by the appellant on January 14, 1985, and the trial court denied and overruled said motion on February 26, 1985.