518 So.2d 835 (1987)
Charles R. FEW
v.
STATE.
4 Div. 893.
Court of Criminal Appeals of Alabama.
October 13, 1987.
Rehearing Denied November 10, 1987.
Certiorari Denied January 22, 1988.
*836 Julius H. Hunter, Jr., Phenix City, for appellant.
Don Siegelman, Atty. Gen., and Joan B. Singleton, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 87-244.
TYSON, Judge.
Charles R. Few was indicted for murder in violation of § 13A-6-2, Code of Alabama 1975. The jury found the appellant "guilty of murder as charged in the indictment". At the sentencing hearing the appellant was sentenced to life imprisonment in the state penitentiary.
On the evening of September 6, 1986, the appellant visited Benita Washington's residence. Washington resided at Riverview Apartments, Russell County, Alabama. Later that evening Larry Clausell and Charles Sapp came to Riverview Apartments. Clausell went into Washington's apartment to deliver a message and see his son. Shortly thereafter, a heated exchange took place between this appellant and Clausell. Clausell pushed the appellant, who responded in kind. The appellant stabbed Clausell. Clausell died later that evening. Clausell had been drinking earlier and the toxicologist's report showed a blood alcohol level of .21% at the time of his death.

I
The appellant contends that allowing Clausell's family to attend the trial had a prejudicial effect on the jury.
A victim's family should not be excluded from the trial unless there is a valid reason. It is well established in Alabama courts that relatives of the victims can be present in the courtroom during the trial. Howard v. State, 273 Ala. 544, 142 So.2d 685 (1962); Lehr v. State, 398 So.2d 791 (Ala.Cr.App.1981); Hall v. State, 377 So.2d 1123 (Ala.Cr.App.), cert. denied, 377 So.2d 1128 (Ala.1979); Kendrick v. State, 55 Ala. App. 683, 318 So.2d 378 (1975); Brodka v. State, 53 Ala.App. 125, 298 So.2d 55 (1974); Pollard v. State, 12 Ala.App. 82, 68 So. 494, reversed on other grounds, Ex parte Pollard, 193 Ala. 32, 69 So. 425 (1915). The appellant has shown no valid reason why the victim's family should not have been allowed to attend the trial. It was appropriate for the victim's family to be allowed to attend the trial and the ruling below was correct.
The appellant also contends that the outburst by a spectator substantially prejudiced the jury. It is unclear from the record whether this person was a relative of the victim. The spectator apparently tried to testify from the audience. The record does not reflect what the spectator said. The judge, at this point, gave the following jury instructions:
"THE COURT: Now, ladies and gentlemen, this case is of a sensitive nature. I want you to disregard any comments that were made. Those comments were made by a party that is not a witness in this case. It is not testifying. It is not evidence. I want you to disregard that. Is there anybody on the jury that cannot *837 disregard the comments that were made if you overheard them or if you understood what she said? Is there anybody who cannot disregard that as evidence in this case?
"So, you will disregard any comments that were made. All right." (R. 107)
These instructions were adequate curative jury instructions. The record does not reflect the appellant's counsel objecting to either the outburst or the instructions given by the judge. See Adair v. State, 51 Ala.App. 651, 288 So.2d 187 (1973); Retowsky v. State, 333 So.2d 193 (Ala.Crim.App. 1976).
The appellant now raises on appeal that a mistrial should have been declared at this point. It is well founded that an appellant cannot on appeal raise an issue which was not properly preserved at trial. Bell v. State, 466 So.2d 167 (Ala.Cr.App.1985); Fuller v. State, 472 So.2d 452 (Ala.Cr.App. 1985); Johnson v. State, 480 So.2d 14 (Ala. Cr.App.), cert. denied, 480 So.2d 14 (Ala. 1985); Wood v. State, 416 So.2d 794 (Ala. Cr.App.1982). In this cause the issue of whether a mistrial was appropriate is not reviewable by this court because it was not raised at the trial. See also Shadle v. State, 280 Ala. 379, 194 So.2d 538 (1967).

II
The appellant also contends that the State should not have been allowed to question the appellant about his prior convictions for assault in the third degree. While it is true this is not a crime of moral turpitude, the appellant's counsel did not make the proper objection. The appellant's counsel objected on the ground that it was irrelevant. "The grounds that evidence is irrelevant, incompetent, and immaterial are general grounds of objection." Stringer v. State, 372 So.2d 378 (Ala.Cr.App.), cert. denied, 372 So.2d 384 (Ala.1979). Therefore, the appellant made a general objection.
"When the trial judge, for example, overrules a general objection, such action will be affirmed on appeal unless the matter objected to was patently illegal or irrelevant." Gamble, McElroy's Alabama Evidence, § 426.01(7) (1977). In discussing a "general objection overruled held insufficient to predicate error on appeal" McElroy's states "the decisions cited below are those in which the appellate courts have held that evidence is not patently illegal or irrelevant and, therefore, a general objection insufficient on appeal." The listed cases included the following case: "Williams v. State, 34 Ala.App. 340, 39 So.2d 703 (1949) [held] a general objection insufficient to predicate as error that evidence violated the rule that a witness' conviction of a crime is not admissible to impeach him unless it affirmatively appears that such conviction was a crime involving moral turpitude." Id. at § 426.01(8). In our cause the overruling of the general objection by the appellant's attorney is affirmed because the allowing in of the prior convictions was not patently illegal or irrelevant.
It should be noted that the State later introduced into evidence the properly certified court records of those previous convictions. Thus, this cause does then not present the issue presented in Ex Parte Michael Dean Peagler, 516 So.2d 1369 (Ala.1987).

III
The third contention by the appellant is that the trial court erred in allowing the State to show that the appellant was a jealous person.
The appellant's counsel made a general objection when the State asked Ms. Crowell, the appellant's witness, about the appellant being a jealous person. This, being only a general objection, along with the fact that on cross of the appellant, the following occurred:
"Q You weren't jealous?
"A No, if anything, he should be jealous of me.
"Q Were you jealous or not?
"A No.
"Q You are not a jealous kind of fellow?
"A. No, sir. (R. 118)
*838 This was allowed without objection and, therefore, such further testimony on the appellant's being a jealous person would not constitute reversible error since a negative response was given. Coker v. Ryder Truck Lines, 287 Ala. 150, 249 So.2d 810 (1971); Stoudemire v. Stoudemire, 437 So.2d 585 (Ala.Civ.App.1983); Gamble, McElroy's Alabama Evidence, § 426.01(20) (1977).

IV
The appellant's last contention is that the State should not have been allowed to question Ms. Crowell about alleged outstanding warrants on the appellant. The appellant's attorney failed to object to this questioning.
As also noted previously in this opinion in section I, "this court cannot consider matters on appeal that were not preserved for review by objection at trial." Fuller v. State, 472 So.2d 452, 454 (Ala.Cr. App.1985). Therefore, this issue was not properly preserved for review.
For the reasons stated, the judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
BOWEN, P.J., concurs in result only with opinion.
BOWEN, Presiding Judge, concurring in result.
I concur in the result reached by the majority in Part II of its opinion. Allowing the evidence of appellant's prior assault convictions was not error because, although the convictions were clearly not crimes involving moral turpitude, as distinguished from the impeaching conviction used in Williams v. State, 34 Ala.App. 340, 39 So.2d 703 (1949) (which may have been a crime involving moral turpitude), the appellant's prior assault convictions were admissible in rebuttal of his testimony that he was not an aggressive person. The defendant specifically testified, "[The victim] was bothering me. I don't bother nobody. He was bothering me. I didn't do anything... it was in self-defense." (R. 111.)
"Evidence of collateral crimes or acts is also admissible to rebut material aspects of the testimony of certain witnesses including the defendant.... When evidence is offered to contradict a witness' testimony on a material issue, extrinsic evidence is admissible to prove the fact at issue."
W. Schroeder, J. Hoffman, & R. Thigpen, Alabama Evidence § 4-4(d) at 128 (1987) (emphasis added). See also 3A Wigmore, Evidence § 1000 (Chadbourn rev. 1970); C. Gamble, McElroy's Alabama Evidence §§ 155.01, 156.01(3) (3d ed. 1977). "Thus, when a witness testified that he had never had problems in controlling his temper, extrinsic evidence possibly contradicting his assertion was admissible." Schroeder, "Evidentiary Use in Criminal Cases of Collateral Crimes and Acts: A Comparison of the Federal Rules and Alabama Law," 35 Ala.L.Rev. 241, 272 (1984). See Carson v. Polley, 689 F.2d 562 (5th Cir. 1982) (deputy sheriff, a defendant in a 42 U.S.C. § 1983 suit alleging excessive force used on plaintiff during booking into jail, allowed to be impeached by performance evaluation report stating that deputy "tends to get into arguments with inmates, lets his temper flare up too quickly" following deputy's testimony that he could not have "lost his temper" while booking plaintiff). See also cases collected in W. Schroeder, J. Hoffman, & R. Thigpen, Alabama Evidence § 4-4(d) at 141 n. 162.
Generally, however, the State may not contradict the testimony of the defendant on an immaterial matter. 3A Wigmore, Evidence § 1002 (Chadbourn rev. 1970); C. Gamble, McElroy's Alabama Evidence § 156.01 (3d ed. 1977). McElroy, echoing Wigmore, sets out the following test for "materiality": "[I]f a fact is admissible neither upon an issue under the pleadings of the case nor for the purpose of impeaching the witness' credibility in some means other than the inconsistency, then such fact is immaterial and not subject to contradiction." C. Gamble, McElroy's Alabama Evidence § 156.01(3) at 326. Compare 3A Wigmore, Evidence § 1003 at 961 ("Could *839 the fact as to which error is predicated, have been shown in evidence for any purpose independently of the contradiction?").
Here, the appellant's testimony that he did not "bother nobody" was not material to his defense of self-defense because, although an accused is entitled to offer evidence of his good character to show that he was unlikely to commit the offense, see McCormick on Evidence § 191 at 454 (E. Cleary 2d ed. 1972), he is only entitled to prove his good character by way of evidence of his reputation, McCormick, supra, § 191 at 455; 7 Wigmore, Evidence § 1983 at 215 (Chadbourn rev. 1978) ("In the application of the rule to a party ... in a criminal case, the majority of jurisdictions have made reputation the exclusive mode of proof").
"In Alabama, a defendant who wishes to introduce evidence of his good character must do so by means of evidence of his general reputation in the community prior to the time the offenses were committed. Defense witnesses cannot testify to their personal knowledge of the defendant's good character nor can the defendant introduce evidence of specific good acts or evidence that he was never previously arrested or charged with a crime."
Schroeder, Hoffman & Thigpen, Alabama Evidence, supra, § 4-5(b)(1)(A) at 143. See also C. Gamble, McElroy's Alabama Evidence, supra, § 69.01(9)
Thus, under the Wigmore-McElroy test, neither the appellant's own assessment of himself as non-aggressive nor the State's contradiction of this assessment by showing prior assault convictions would have been material, because neither piece of evidence would have been independently admissible. The defendant's proof was inadmissible because it did not follow the character evidence rule of proving good character exclusively by reputation. The State's proof was inadmissible because prior convictions not involving moral turpitude may not be used for impeachment.
Nevertheless, under the doctrine of curative admissibility, the State was entitled to contradict the appellant's statement that he would not "bother nobody," (and therefore the inference that he was generally peaceable and non-aggressive) by showing his prior assault convictions.
"In a criminal case the accused is allowed to show his good character for a particular relevant trait by proving his good reputation in the community. The accused, however, cannot prove his good character by introducing evidence of prior specific meritorious acts or conduct. If the accused does introduce this improper evidence of prior specific acts, then the door is opened for the state to prove his commission of other prior specific crimes which tend to refute his claimed course of good conduct or meritorious acts."
C. Gamble, McElroy's Alabama Evidence § 69.01(9) at 139 (emphasis added).
In Morgan v. State, 440 So.2d 1240 (Ala. Cr.App.1983), the defendant testified on direct examination that he had three prior convictions and that to all three of his prior crimes he had pled guilty. In answer to his attorney's question, "would you have pled guilty on this [offense] had you done it?" the defendant answered "yes." This court held that the State was properly allowed to contradict the defendant's implication of honest confession to wrongdoing by showing, first, that the Habitual Offender Act was not in effect at the time of his earlier pleas, and, second, that one of his prior convictions for grand larceny had been reduced from a robbery charge. Judge Taylor, writing for the court, observed the following:
"It is axiomatic that an accused is not allowed to prove good character by showing specific evidences of meritorious conduct.
"By implying that appellant habitually confessed to those crimes for which he was responsible, appellant opened the door wide for the state to show appellant's seemingly virtuous confessional tendency was in fact motivated by ulterior, self-serving reasons." 440 So.2d at 1241 (citations omitted).
Similarly, this appellant, by testifying that he did not "bother nobody" opened the *840 door for the State to show, by what would otherwise have been illegal impeachment evidence, that he had two prior assault convictions and could not, therefore, be considered a generally peaceable individual.
"If illegal evidence is introduced by one party and admitted, then the opponent has the right to introduce illegal evidence in rebuttal, even though the opponent failed to object to the initial introduction of illegal evidence." Morgan v. State, 440 So.2d at 1241 (quoting Wyrick v. State, 409 So.2d 969, 975 (Ala.Cr.App. 1981).
Believing that a general objection is sufficient to preserve the patent error of admitting impeaching convictions not involving moral turpitude, but finding that the impeaching convictions here were admissible under the doctrine of curative admissibility, I concur in the result.