[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 744 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 745 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 746 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 747 
Alonzo Lydell Burgess was convicted by a Jefferson County jury of the attempted murder of LaRico Devon Long, § 13A-4-2, Ala. Code 1975, and of the capital murder of Shelia Nnodimele, Alexis Nnodimele, and Latoria Long by one act or pursuant to one scheme or course of conduct, § 13A-5-40 (a)(10), Ala. Code 1975. The jury recommended, by an 8-4 vote, that Burgess receive a sentence of life imprisonment without parole. The trial court sentenced Burgess to death. Burgess appeals from the capital murder conviction and death sentence. We affirm.
The trial court's sentencing order summarized the evidence presented at the guilt phase as follows:
 "The Court finds from the evidence introduced at trial that the defendant, Alonzo Lydell Burgess, was living with the *Page 748 
deceased, Sheila Nnodimele, and her three children, deceased, Latoria Long, age 14 years, deceased, Alexis Nnodimele, age 8 years, and LaRico Long, age 2 1/2 years on or about January 28, 1993, and January 29, 1993, at her home on Brotherton Street in Cherokee, Alabama. The Court finds that defendant had been living with Shelia Nnodimele for some time and that they had had a stormy relationship with the defendant physically abusing the deceased, Shelia Nnodimele, and with the defendant having a bad relationship with the oldest daughter, Latoria Long, deceased. The Court finds from the evidence that the deceased, Shelia Nnodimele, and her three children had had to move out of their own home on several occasions during Shelia Nnodimele's relationship with the defendant due to his abuse. The Court further finds from the evidence that the defendant, Alonzo Lydell Burgess, was dependent on deceased, Shelia Nnodimele, for furnishing him money (at the time, she worked, and he did not), for a roof over his head, his food and for transportation. The Court further finds that the defendant, Alonzo Lydell Burgess, had a crack cocaine habit at the time in question and that he would frequent the place of employment of deceased, Shelia Nnodimele, especially on paydays (Thursdays) in order to get her check so he could support his habit.
 "The Court further finds that the two older children, Latoria Long and Alexis Nnodimele, were good students and had not missed any full days of school in the 1992-1993 school year prior to January 29, 1993. The Court finds that the last time these two girls were seen alive was in the afternoon at the end of school on January 28, 1993. The Court further finds that on the evening of January 28, 1993, the defendant was seen by various witnesses at Shelia Nnodimele's place of employment with another woman at the beginning of Ms. Nnodimele's shift, and that he did not get her paycheck even though it was payday. The Court finds that he called her at least twice and the first time he called, Alvin Powers, her co-worker, who answered the telephone, did not tell Shelia Nnodimele who was calling, but he knew it was the defendant. She answered the telephone. The second time defendant called, Jessie Freeman, her co-worker answered the telephone and he told Shelia Nnodimele who was calling and she refused to answer to telephone.
 "The Court finds from the evidence that the defendant killed the two girls between the time they were last seen at school and the time they were found on the morning of January 30, 1993. More specifically, the Court finds from the evidence that he beat the two girls to death with a bumper jack assembly post and strangled Latoria Long with a ligature on the night of January 28, 1993, or the early morning hours of January 29, 1993, prior to 7:15 a.m. when Shelia Nnodimele, deceased, returned to her home from work.
 "The Court further finds that Shelia Nnodimele was last seen alive the morning of January 29, 1993. The Court further finds that the defendant killed Shelia Nnodimele on the morning of January 29, 1993, by beating her on or about the head with a bumper jack assembly post and by strangling her with a ligature and by suffocating her when she returned home from work. When she was found dead, she was wearing the clothes she had been wearing when she was last seen at work by one of the coworkers. Dr. Kenneth Warner testified that the cause of death of Shelia Nnodimele was trauma to her head, strangulation or suffocation or a combination of the three and that the manner of death was homicide; that he testified that the cause of death of Latoria Long was cranial cerebral trauma (trauma to her head) and strangulation by ligature, and that the manner of her death was homicide, and finally that he testified that the cause of Alexis Nnodimele's death was cranial cerebral trauma (trauma to her head) and that the manner of her death was homicide. He further testified that the presence of cerebral edema in Alexis Nnodimele indicated that she died slowly, because a person has to be alive in order for edema to appear. He testified that all three deceased suffered extensive fractures to their skulls and neck[s]. With respect to the *Page 749 
neck injuries found by Dr. Warner on Shelia Nnodimele and Latoria Long, he testified they were identical. He further testified that the victims received the blow to the top of their heads which was of such magnitude that it caused a fracture to the base of their skulls. Likewise did Dr. Warner find an extensive fracture to the base of the skull on Alexis Nnodimele, and he testified that her injuries were consistent with those of her mother and sister.
 The Court further finds from the evidence that defendant on January 29, 1993, was seen by various witnesses, either wanting to borrow money or pawning items belonging to the deceased victims, and that he appeared nervous, fidgety, and big-eyed.
 "The Court further finds that after defendant killed the three victims, he attempted to commit suicide on January 30, 1993, and left two notes indicating the reasons for the killings. However, the Court also finds from the evidence that defendant's misuse of the deceased, Shelia Nnodimele's money, house and vehicle was in the process of being terminated by her immediately prior to her death."
We observe at the outset that Burgess did not object at trial to many of the instances he now claims to be reversible error. Although this failure to object does not preclude appellate review under the plain error standard, it weighs against any claims of prejudice. Taylor v. State, 666 So.2d 36, 49
(Ala.Cr.App. 1994), aff'd, 666 So.2d 73 (Ala., 1996), cert. denied,616 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 866 (1996). "The plain error standard applies only where a egregious error occurred at trial and that error has or probably has substantially prejudiced the defendant." Ex parte Trawick, 698 So.2d 162, modified on denial of rehearing, June 13, 1997.
 GUILT PHASE I
Burgess contends that the indictment against him was invalid because the trial court failed to follow circuit court rules governing the selection of grand jury forepersons. He argues also that the trial and district attorney should have been disqualified from participating in the hearing on this issue. Burgess is not entitled to relief on his claims.
Before trial, Burgess filed a motion to dismiss the indictment against him on grounds that there had been a systematic underrepresentation of blacks, women, and young adults in the selection of grand jury forepersons in Colbert County.[1] He also moved that the trial judge disqualify herself and the district attorney from hearing any and all matters he raised regarding the selection of the grand jury foreperson. The trial court entered orders denying the motions to disqualify, and set the discriminatory selection claim for a hearing.
At the hearing, the Colbert County clerk testified that before Burgess was indicted, a new procedure for selecting grand jury forepersons had been implemented, and that under the new procedure a foreperson was randomly selected from the group of grand jurors. The parties then stipulated and the trial judge stated for the record that the 18 grand jurors who heard the appellant's case had been randomly selected. Of the 18 grand jurors, only one was black; the trial judge acknowledged that she selected that individual to be the grand jury foreperson as, the judge stated, "affirmative action to prevent any defects there may have been in the selection of grand jury forepersons during the prior years." Defense counsel then stated that because of the new selection procedure, he would not present historical data, but rather his motion to dismiss the indictment would be limited to whether "affirmative action" was a permissible consideration in the selection of grand jury forepersons. The trial court ultimately denied the motion to dismiss the indictment.
On appeal, Burgess argues that, while the trial court's desire to provide minority representation on the grand jury was admirable, the court's actions defeated the purpose behind *Page 750 
the recent change to a random selection of forepersons and improperly deviated from the "approved" procedure. Burgess also argues that the court's "affirmative action plan" discriminated against whites and women. The State contends that Burgess failed to establish a prima facie case of discrimination in the selection of grand jury forepersons, and that the error, if any, was harmless because the court's selection of the grand jury foreperson did not violate Burgess's right to a fair trial.
To prove a prima facie case of discrimination in the selection of a grand jury foreperson, a petitioner must show: 1) that the group alleged to be discriminated against is a distinct group, singled out for different treatment; 2) the degree of underrepresentation of the group over a significant period of time; and 3) that the selection process either is not race-neutral or is susceptible to abuse. Pace v. State,714 So.2d 320 (Ala.Cr.App. 1996), Lee v. State, 631 So.2d 1069, 1060 (Ala.Cr.App. 1993), Locke v. State, 631 So.2d 1062, 1063-64
(Ala.Cr.App. 1993) (all citing Johnson v. Puckett, 929 F.2d 1067, 1071-72
(5th Cir.), cert. denied., 602 U.S. 898, 112 S.Ct. 274,116 L.Ed.2d 226 (1991)). Burgess argues in his brief that the judge's actions discriminated against women and whites[2], yet there is absolutely no support in the record for this allegation; Burgess did not even attempt to establish that these groups were distinct and that they had been singled out for discrimination, or that the groups had been underrepresented over a significant period of time.[3] Burgess failed to establish a prima facie case of discrimination in the selection of grand jury forepersons, and his claim that whites and women were discriminated against must fail.
Burgess argues that the trial court's selection of the grand jury foreman in this case "violated circuit court. rules." However, as Burgess acknowledges in his brief, Alabama law provides that "The court shall appoint the foreman of the grand jury." Rule 12.5 (a), Ala. R. Crim. P. Burgess has cited no binding authority, and our research has disclosed none, that holds that the trial court's one-time selection of the minority member of a properly constituted grand jury to serve as foreperson is grounds for reversal. To the contrary, Burgess has established no reason for reversal here.
We find additional support for our decision in a recent Alabama Supreme Court case, Ex parte Myers, 699 So.2d 1286 (Ala. 1997). The Alabama Supreme Court quoted extensively from Hobby v.United States, 468 U.S. 339, 104 S.Ct. 3093, 82 L.Ed.2d 260 (1984), which analyzed a defendant's due process claim with regard to alleged discrimination in the selection of grand jury forepersons:
 "`Discrimination in the selection of grand jury foremen — as distinguished from discrimination in the selection of the grand jury itself — does not in any sense threaten the interests of the defendant protected by the Due Process Clause. Unlike the grand jury itself, the office of grand jury foreman is not a creature of the Constitution; instead, the post of foreman was originally instituted by statute for the convenience of the court. . . . Today, authority for the appointment of a grand jury foreman is found in Federal Rule of Criminal Procedure 6 (c), which provides [that the responsibilities of the grand jury foreman are essentially clerical in nature.]
". . . .
 "`. . . [T]he impact of a federal grand jury foreman upon the criminal justice system and the rights of persons charged with crime is "minimal and incidental at best." [United States v. Hobby, 702 F.2d 466, 471
(4th Cir. 1983).] Given the ministerial nature of the position, discrimination in the selection of one person from among the members of a properly constituted grand jury can have little, if indeed any, appreciable effect upon the defendant's due process right to fundamental fairness. Simply stated, the role of the foreman of a federal *Page 751 
grand jury is not so significant to the administration of justice that discrimination in the appointment of that office impugns the fundamental fairness of the process itself so as to undermine the integrity of the indictment.
 "`Nor does discrimination in the appointment of grand jury foremen impair the defendant's due process interest in assuring that the grand jury includes persons with a range of experiences and perspectives. The due process concern that no "large and identifiable segment of the community [be] excluded from jury service," Peters v. Kiff, 407 U.S., [493,] 603 [92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972)], does not arise when the alleged discrimination pertains only to the selection of a foreman from among the members of a properly constituted federal grand jury. That the grand jury in this case was so properly constituted is not questioned. No one person can possible represent all the "qualities of human nature and varieties of human experience," ibid., that may be present in a given community. So long as the composition of the federal grand jury as a whole serves the representational due process values expressed in Peters, discrimination in the appointment of one member of the grand jury to serve as its foreman does not conflict with those interests.
 "`The ministerial role of the office of federal grand jury foreman is not such a vital one that discrimination in the appointment of an individual to that post significantly invades the distinctive interests of the defendant protected by the Due Process Clause. Absent an infringement of the fundamental right to fairness that violates due process, there is no basis upon which to reverse [Hobby's] conviction or dismiss the indictment.'"
Ex parte Myers, 699 So.2d 1286, 1296 n. 4 (quoting Hobby v.United States, 468 U.S. at 344-46, 104 S.Ct. at 3096-97).
The Alabama Supreme Court then stated:
 "Applying the reasoning of the United States Supreme Court in Hobby and recognizing that a review under the plain error rule, which guarantees a defendant a fundamental right to fairness, is tantamount to a due process review, we conclude that, under the facts of this case, assuming discrimination entered into the selection of the grand jury foreperson in Morgan County, that discrimination does not warrant the reversal of the conviction against Myers under the plain error rule. The rule of the grand jury foreperson in Morgan County, whose powers were primarily ministerial, Rule 12.5, Ala. R. Crim. P., was `not so significant to the administration of justice that discrimination in the appointment of that office impugn[ed] the fundamental fairness of the process itself so as to undermine the integrity of the indictment'
against Myers. 468 U.S. [at] 345[, 104 S.Ct. at 3096-97]. Furthermore, so long as the grand jury itself was properly constituted, there was no risk that the appointment of one of its members as foreman distorted "the overall composition of the array or otherwise taint[ed] the operation of the judicial process." 468 U.S. at 348[, 104 S.Ct. at 3098]. In this case, nothing in the record and nothing argued to this Court indicates that the grand jury was not properly constituted.
Ex parte Myers, 699 So.2d 1286, 1296 n. 4.
As was the case in Myers, nothing in the record before us indicates that the grand jury was not properly constituted. In light of the fact that in Alabama the grand jury foreperson's powers are primarily ministerial, and in the absence of evidence of any pattern of discrimination, the trial court's one-time selection of a minority foreperson for racial reasons did not "undermine the integrity of the indictment." Hobby,468 U.S. at 345, 104 S.Ct. at 3097. We do not condone the purposeful exclusion of any group from appointment as forepersons of grand juries. The deliberate selection of a minority foreperson in this case, however, does not warrant the reversal of the conviction and the dismissal of the indictment against the appellant.
Because we find no error in the selection of the grand jury foreperson, we need not address Burgess's claims regarding the judge's failure to recuse herself and to disqualify the district attorney from the hearing *Page 752 
on this matter. We note, however, that because the parties stipulated to the events that occurred with regard to the foreperson's selection and the trial judge stated the circumstances of the selection on the record, Burgess's motions became moot.
 II.
Burgess contends that the prosecutor committed reversible error when, during his closing arguments, he allegedly commented on the appellant's failure to testify at trial. The three comments to which Burgess now objects are underlined in the portions of the closing argument set out below:
 "And then, Jessie Freeman, Jessie Freeman who was the grave yard shift supervisor, later on in the shift, he got another call. It is Alonzo Burgess again, call him back. He is worried because he hasn't gotten any money yet. He didn't say that, but you can see, you can see what he [was] doing.
(R. 2699.)
 "You know, one of the things that you can look at in this case is, how many times did the Defendant tell people things that weren't true, or not tell people things, or misrepresent things? He told Donna Cosby that Shelia was out of town, do you remember that? Heather Wilcox, now whether it was the same time or not, Heather Wilcox heard him ask if Shelia had called, this was on Friday afternoon? He told Ronald Chapman that Shelia and Norma had gone to town. Shelia had his money, and he would pay him when she got back. He told Melissa Lock that he was trying to go see his son in Tupelo. I don't know if he had a son in Tupelo or not. But, there certainly hasn't been any evidence to that effect."
(R. 2710.)
 "Do you remember how Sam Leggett got on the stand, and his memory was that the transaction with Shelia was on Friday. Well, then we go and look and find the pawn ticket, State's Exhibit No. 63. I asked him on cross-examination, wasn't it the 26th, and there it is, in blue ink, on that pawn ticket, with the signature recognized by Shelia's mother, as being Shelia's signature, January 26th.
 "I wonder where the Defendant was. We don't have any testimony about where he was on the 26th, while Shelia Nnodimele was in that pawn shop.
But, I bet you, I bet you, I can figure it out from the evidence. I bet you can too."
(R. 2711-12.)
A prosecutor's direct comment on a defendant's failure to testify violates the defendant's rights under the Fifth andFourteenth Amendments to the United States Constitution. Griffinv. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106
(1965). It also violates the defendant's rights under the Alabama Constitution. Beecher v. State, 294 Ala. 674, 320 So.2d 727
(1975). Indirect statements of the prosecutor that the jury would necessarily interpret to be comments on a defendant's failure to testify have also been held to violate the defendant's constitutional rights. Marsden v. Moore, 847 F.2d 1636 (11th Cir.), cert. denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566
(1988). However, prosecutors may comment on the evidence presented and may draw conclusions and legitimate inferences from that evidence. E.g., Dill v. State, 600 So.2d 343, 355
(Ala.Cr.App. 1991), aff'd, 600 So.2d 372 (Ala. 1992), cert. denied,507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993).
Burgess did not object at trial to any of the comments he now alleges were error. This failure to object does not prevent our review, but it is a factor to be weighed, because the failure to object may indicate that defense counsel did not consider the comments to be particularly harmful. Ex parte Kennedy,472 So.2d 1106 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340,88 L.Ed.2d 325 (1985). Moreover, Burgess's failure to object requires us to evaluate the statements under the plain error rule. Rule 45A, Ala. R. App. P.
We find that none of the comments to which Burgess now objects were improper. The prosecutor simply commented on the evidence and drew his inferences therefrom in his summary of the case presented to the jury. In each instance, the prosecutor summarized *Page 753 
for the jury what testimony had been presented, acknowledged that he did not know every detail of the events leading up to the murders, and made certain inferences based on the testimony presented. Ex parte Payne, 683 So.2d 458 (Ala. 1996), cert.denied, ___ U.S. ___, 117 S.Ct. 1319, 137 L.Ed.2d 481 (1997) presented similar facts. The prosecutor in that case stated:
 "The conjecture arises `What happened during that time frame?' I don't know. I don't know whether [Payne] asked for the magazine back and Braxton Brown said, `No way.'"
683 So.2d at 466 (emphasis in original). The Alabama Supreme Court held that the statement was not a comment on the defendant's failure to testify, but rather it summarized the case and commented on inferences that could be drawn from the evidence.
The prosecutor here did not violate Burgess's right not to testify, and no plain error occurred regarding this issue.
 III
Burgess next argues that the trial court interfered with his closing argument when it sustained the State's objection to what he characterizes as a critical portion of his argument. The State argues that the trial court correctly sustained its objection. Questions regarding the propriety of counsel's arguments to the jury are left to the trial court's discretion, and we will not reverse the trial court's decision on this issue unless we find an abuse of that discretion. See Kuenzel v. State, 577 So.2d 474
(Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala.), cert. denied,502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
Defense counsel argued to the jury that the State's forensic expert testified that if defense counsel held a certain object[4] and used it to strike someone, his fingerprints would be left on the object. The State objected on grounds that defense counsel had mischaracterized the expert's testimony, and the trial court sustained the objection.
The trial court's ruling was correct, because the expert never testified that fingerprints would definitely be left on any object. He testified in one instance that he would expect prints to be left on an item — and the item was not identified in the record — and in another instance that prints probably would be left on a piece of paper. Counsel must be permitted to draw their own conclusions and express their arguments in their own way, but they cannot create evidence. Timmons v. State, 487 So.2d 975, 984
(Ala.Cr.App. 1986). Because defense counsel's comment was not based on the expert's testimony or on a legitimate inference from that testimony, the State's objection was properly sustained.
 IV
Burgess contends that the prosecutor engaged in misconduct by making improper remarks during closing argument to the jury. He failed to object to several of these comments at trial, so we will review those comments under the plain error rule. Rule. 45A, Ala. R. App. P. We have stated on numerous occasions that, in judging a prosecutor's closing arguments, it is not enough that a comment was undesirable; the question is whether the comment "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Roberts v. State, [Ms. CR-93-1766, May 23, 1997] ___ So.2d ___ (Ala.Cr.App. 1997) (citations omitted). We have reviewed each of Burgess's claims regarding the prosecution's arguments, and we find no error or plain error.
 A
Burgess claims first that the prosecutor expressed his personal opinion about the strength of the State's case and that his expression of this opinion rendered the trial fundamentally unfair. The first instance Burgess finds objectionable arose during the prosecutor's guilt phase closing argument, when the prosecutor apologized to the jury for having to introduce into evidence photographs of the victims, and described these photographs as "some of the most disgusting *Page 754 
things that I have ever seen in my life." Burgess did not object to this comment at trial, but now contends that this comment conveyed to the jury that the prosecutor had vast experience and that he had never witnessed a more gruesome crime. We disagree with Burgess's interpretation of the prosecutor's comments. The prosecutor also told the jurors that it was important that they view the photographs "because you have got to see the nature of the injuries to understand what happened in this case." The prosecutor was simply commenting on the evidence and explaining to the jury the relevance of the photographs to the case, which he and defense counsel were both permitted to do. The photographs are graphic and gruesome; no error occurred when the prosecutor referred to them as disgusting in his closing argument and his comments did not imply that this crime was the worst he had prosecuted.
Burgess also contends that the prosecutor vouched for the strength of the State's case when he argued, "I guarantee you, he was in and, out of that house during the period of time that those bodies were lying in the bedroom." The prosecutor's comment was based on the evidence presented at trial, which demonstrated that Burgess had made numerous trips in and out of the house during the day and night before the morning on which the bodies were discovered. The trial court has broad discretion in its control of closing argument, Madison v. State, 718 So.2d 90
(Ala.Cr.App. 1997), and we find no abuse of discretion here.
Finally, Burgess contends that the prosecutor gave his personal opinion about evaluating a witness's credibility when he argued that if a witness's story is perfect, that is a strong indicator that the person is not telling the truth. Burgess did not object to this comment at trial, and this failure to object weighs heavily against any claim of prejudice. The prosecutor made these comments in his rebuttal closing argument in response to defense counsel's argument that the State's witnesses contradicted themselves. The prosecutor also reminded the jurors that they were to decide the case based on the evidence presented and that only they could determine the credibility of the witnesses and which of the witnesses had told the truth. He then argued that little inconsistencies in perception occur in the real world when several people witness an event. Considered in context, the prosecutor's argument was a legitimate reply to defense counsel's argument. See Brooks v. State, 696 So.2d 176 (Ala.Cr.App. 1996), aff'd, 695 So.2d 184 (Ala. 1997). No plain error occurred.
 B
Burgess argues that the prosecutor injected victim impact evidence into his guilt-phase closing argument. We disagree. The prosecutor properly referred to the school records of the two young victims in his argument, because school officials had testified as to the records and the school records were in evidence. Likewise, the prosecutor's comment about Shelia's father having built the house Shelia lived in was based on the evidence before the jury. We will not hold a prosecutor in error for making legitimate comments based on the evidence admitted at trial. Moreover, we note that Burgess objected to neither of the foregoing comments at trial; no plain error occurred.
Burgess argues that the court erred in overruling his objections to the prosecutor's statements that he spoke on behalf of the victims' family and that the family did not want the jury to base its decision on sympathy for the victims. We have held that it is not reversible error for a prosecutor to suggest that he is speaking on behalf of the victim's family. See Slaton v.State, 680 So.2d 879, 906-07 (Ala.Cr.App. 1996), aff'd,680 So.2d 909 (Ala. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 742,136 L.Ed.2d 680 (1997).
Furthermore, we refuse to find error when a prosecutor argues to the jury that it should base its decision on the evidence and not on extraneous factors such as sympathy. The trial court did not abuse its discretion in its control of closing arguments here.
Finally, Burgess claims that the trial court erred when it overruled his objection to the prosecutor's comments that the victims came from a poor background and *Page 755 
that Shelia was a hard worker. The State argues that the trial court did not abuse its discretion, and we agree. The objected to comments were but a portion of the prosecutor's argument that the criminal justice system protects poor victims as well as wealthy ones, such as those involved in another case being tried in that county at the same time. After defense counsel objected, the prosecutor stated that he meant that the jury should follow the evidence and do justice. That the victims were not wealthy and that Shelia was a hard-working woman were matters in evidence and were properly the subject of comment. Moreover, the prosecutor's comment that the criminal justice system protected both the rich and the poor was in no way prejudicial. In allowing the prosecutor this latitude in his closing argument, the trial court did not commit error.
 C
Burgess argues that the prosecutor undermined his rights to counsel and to a fair trial by "pointedly attacking" defense counsel. Burgess did not raise this objection at trial, so this issue is reviewable only for plain error.
Burgess now cites as error the prosecutor's statements in his guilt-phase closing argument that defense counsel's cross-examination had been "nitpicking," and that if the case was not so serious, he would almost chuckle at defense counsel's statement in his opening argument that Burgess and the child victims had a loving relationship. To constitute reversible error, a prosecutor's alleged improper comments must relate to the issues at trial or be the type of comment that would influence the jury's decision. Boyd v. State, 715 So.2d 825
(Ala.Cr.App. 1997). These statements would not have influenced the jury's decision. Further, the comments were clearly made in the heat of debate and in response to defense counsel's closing argument in which he detailed every possible inconsistency and weakness in the State's case.
Burgess also argues that the prosecutor's statement in his rebuttal argument that defense counsel got a little confused about the testimony of a certain witness was error. No objection was made at trial, and we find no plain error on the issue. The State noted that in his closing argument, defense counsel incorrectly identified the witness who testified about cutting LaRico's hair. The prosecutor simply responded to this minor mistake, and in doing so, he committed no plain error.
 D
Burgess next claims that the prosecutor argued facts not in evidence. He claims that the prosecutor told the jury that LaRico survived the attack only because his skull was soft and he argues that this conclusion was not supported by any testimony. Burgess did not object to this argument at trial, so we must review it to determine whether plain error exists. We have examined the complained-of comments in the context of all of the evidence and in the context of the complete closing arguments to the jury. SeeRoberts v. State, [Ms. CR-93-1766, May 23, 1997] ___ So.2d ___ (Ala.Cr.App. 1997). The prosecutor argued to the jury his theory of the case and summarized the medical and forensic testimony regarding the head wounds all the victims suffered, noting that all of the head wounds were very similar. He then argued inferences from the evidence, e.g., that Burgess inflicted the injuries in anger and without warning to the victims. He argued that the jurors could rely on their common sense and experience, and suggested that LaRico probably survived only because he was a baby and his skull had soft spots. Burgess now objects to the final comment, but we find that, in context, the remark was not outside the bounds of legitimate argument. This brief comment was but a small portion of the entire argument, and was a permissible inference based on the prosecutor's interpretation of the evidence. No plain error occurred.
Burgess also objects, for the first time on appeal, to comments the prosecutor made at the penalty phase on grounds that they were based on facts not in evidence. One of those objections is actually directed at a question asked on cross-examination of a defense witness, and not a comment made in *Page 756 
closing argument. Even if any error had occurred during the sentence phase argument, it would have been harmless because the jury recommended that Burgess be sentenced to life imprisonment without parole. Roberts v. State, supra.
 E
Burgess next argues that the prosecutor made misleading statements about the law during its arguments to the jury. He did not object to the comments, so we must review the objections pursuant to the plain error rule.
Burgess first challenges the following statement in the prosecutor's discussion of the reasonable doubt standard: "All it takes, all it takes is one witness, one witness that you find credible, and that you find to be telling the truth to meet the burden of proof." When considered in context, the statement was not an improper comment on the burden of proof. The prosecutor was pointing out in his rebuttal argument that the State was not required to prove Burgess's guilt beyond all doubt and to a mathematical certainty. This legal proposition was correct, and the jury was later instructed on this point. The prosecutor did not commit plain error.
Burgess next argues that the prosecutor's argument that, because the crimes were committed by one person, they were committed pursuant to one scheme or course of conduct and therefore constituted capital murder, was reversible error. He did not object to this argument at trial. Moreover, Burgess has mischaracterized the prosecutor's argument. The parties are permitted to summarize and make legitimate comments on the evidence, and the prosecutor did so in this case. The prosecutor argued that the evidence, including the similar injuries suffered by all of the victims, indicated that the victims were killed by the same person and pursuant to one scheme or course of conduct. Nothing in this portion of the argument exceeded the bounds of proper comment.
Finally, Burgess contends that the prosecutor incorrectly defined "mitigation" during the sentencing phase closing argument. He did not object at trial. There could have been no harm, even if the argument had been improper, because the jury recommended life imprisonment without parole. Roberts v. State,supra.
 F
Burgess argues, finally, that the prosecutor argued nonstatutory aggravating circumstances and other irrelevant factors to the jury. Even if the prosecutor had done so, Burgess suffered no harm, because the jury did not recommend the death penalty as punishment. Roberts v. State, supra.
 V
Burgess alleges that victim impact evidence wrongfully dominated the guilt phase of his trial and infringed on his right to a fair determination of his guilt or innocence. We disagree.
 A
Burgess argues, specifically, that during voir dire examination, the victims' family members were allowed to sit at the back of the courtroom where potential jurors were also seated. He argues that the family members might have contacted the potential jurors orally, or they might have communicated with the jurors by eye contact and body language. He further argues that the family's mere presence made it unlikely that the veniremembers' responses to questions were reliable. The State argues, and we agree, that Burgess's argument is based purely on speculation and is without foundation in fact or in law.
Without question, a criminal defendant has a light to a fair trial by impartial jurors. However, the right to a fair trial in no way requires that victims or their surviving family members be barred from the courtroom for the entire trial. To the contrary, the Alabama Crime Victims' Court Attendance Act, §§ 15-14-50
to 15-14-57, Ala. Code 1976, guarantees the victim or the victim's representative the right to be present in the courtroom and to be seated at the prosecution table. This right applies in capital cases. See Weaver v. State, *Page 757 678 So.2d 260, 272 (Ala.Cr.App. 1995), rev'd on other grounds,678 So.2d 284 (Ala. 1996).
Moreover, this court has held on numerous occasions that a victim's family should not be excluded from the trial without a valid reason. See, e.g., Few v. State, 518 So.2d 835, 836
(Ala.Cr.App. 1987), and cases cited therein. During voir dire examination, Burgess moved to exclude the victims' family from the courtroom during the trial, and the trial court held a hearing on the motion. The trial court determined that the family would be permitted to remain in the courtroom but would be seated at the rear of the courtroom. The court admonished the family members to refrain from talking to the potential jurors while they were seated near them during voir dire, and a family member assured the judge that they would not talk to potential jurors.
This court long ago observed that no rule of law authorizes a court to exclude spectators or others from the courtroom during a public trial, except for misconduct, and stated that the decision is left to the discretion of the trial court. Pollard v. State,12 Ala. App. 82, 68 So. 494, rev'd on other grounds, 193 Ala. 32,69 So. 425 (1915). Nothing in the record suggests that the court abused its discretion here, and we will not hold a trial court in error based on the bare, unsupported speculations asserted in an appellant's brief.
 B
Burgess also argues that the court's excusing the family members from the rule requiring witnesses to be removed from the courtroom and permitting them to remain in the courtroom, somehow improperly constituted victim impact evidence. The judge has discretion to excuse some witnesses from the operation of the rule. See, e.g., Kuenzel v. State, 577 So.2d 474, 513
(Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala.), cert. denied,502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). There is absolutely no indication either that Burgess objected to the family's being permitted in the courtroom or that the court abused its discretion in doing so.
 C
Finally, Burgess argues that the State's witnesses' testimony regarding visits with the victims, the children's academic performance, and the purchase of land on which the victims' house was built was irrelevant victim impact evidence. Burgess did not object to any of the testimony he now claims was improper, and this failure to object weighs heavily against his claims of prejudice. Kuenzel v. State, 577 So.2d at 489. We have reviewed the testimony to which Burgess now objects, and the context in which the testimony was elicited, and we find no plain error. Much of the testimony was of a general nature and was elicited to provide a foundation for more specific questions the prosecutor asked. In one instance, defense counsel elicited the testimony. We do not find the testimony to be improper, and we find no error seriously affecting Burgess's substantial rights.
 VI
Burgess contends that several of the trial court's instructions to the jury at the guilt phase of his trial were plagued with reversible error.
First, Burgess objects to the court's instruction on reasonable doubt, claiming that the effect of the instruction was to reduce the burden of proof to "an abiding conviction of the truth of the charges," creating a presumption that the indictment was true and forcing him to overcome that presumption. Burgess made a general objection to the instructions "concerning reasonable doubt," but failed to specify the grounds now raised, so the alleged error was not preserved for appellate review. Because this is a capital case, however, we will review the claim pursuant to the plain error rule.
We note at the outset that Burgess has incorrectly quoted the portion of the trial court's instruction to which he now objects. The trial court instructed the jury that if, after considering all of the evidence, the jurors could not say that they "had an abiding conviction of the Defendant's guilt," they were not convinced beyond a reasonable doubt and Burgess was entitled to an acquittal. The actual basis for Burgess's objection *Page 758 
does not exist in the record, so his objection is moot. Moreover, we note that the trial court's reasonable doubt instruction substantially conforms with the Alabama Pattern Jury Instructions for capital cases. The Alabama Supreme Court has held that no plain error occurs when the trial court instructs the jury in accordance with these pattern jury instructions. Ex parteHarrell, 470 So.2d 1309, 1315 (Ala.), cert. denied, 474 U.S. 936,106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
Burgess also objects to the court's jury instructions on intent and on the element that made these murders capital, i.e., that the murders be committed "by one act or pursuant to one scheme or course of conduct." He raised neither objection at trial, so we must review the claims pursuant to the plain error standard. We find that no plain error occurred. To the contrary, review of the jury charge reveals that the trial court correctly instructed the jury on intent and on the "pursuant-to one-scheme-or-course-of-conduct" element. The instructions are in substantial compliance with the pattern jury instructions approved for use in capital cases, and we will not hold that a court committed plain error when a jury has been so instructed.
 VII
Burgess contends that the trial court erred to reversal when it refused to grant a continuance or a mistrial following the presentation of surprise testimony from a State's witness. The State argues that the trial court did not abuse its discretion, so no reversal is due.
State's witness, Ronald Chapman, worked with Shelia Nnodimele and was called to testify that he saw Burgess at Shelia's place of employment the night before the victims' bodies were discovered. During a lunch break after he testified on direct examination, Chapman revealed to the prosecutor information that he had not previously disclosed to any law enforcement officer. The prosecutor disclosed this information to the court and to Burgess through voir dire examination of Chapman outside the presence of the jury.
Chapman testified on voir dire examination that he and Burgess "ran together" and that they had used crack cocaine before the murders. He stated that approximately one week before the murders, while they were smoking crack, Burgess revealed to him that he and Shelia had had a fight and that he had "started to kill her" with a broken bottle. Chapman also testified that he saw Burgess on Friday morning, the day after he last saw Shelia. He and Burgess were at a house with a drug dealer that Friday morning, Chapman said; Burgess was nervous and shaking and when Chapman asked why he was nervous, Burgess replied that Chapman did not know what was going on. He further testified that Burgess was trying to pawn or sell some items, including hair clippers, to the drug dealer. According to Chapman, Burgess came to his house on the afternoon and evening of the same day. During the afternoon visit, Burgess told Chapman that Shelia was in town. The prosecutor stated that he had told Chapman that if he testified truthfully, he would be given immunity from prosecution for the acts about which he testified.
The prosecutor acknowledged that he intended to present this testimony to the jury, and Burgess made a motion for a mistrial arguing that the sudden disclosure was the only evidence of an admission by him of a prior threat against one of the victims. Burgess argued that he was not adequately prepared to cross-examine Chapman about his disclosure or his criminal background and credibility. Defense counsel stated that unless the court granted "a long recess" so he could investigate Chapman, he could not provide effective assistance of counsel. The court denied the motion for mistrial and defense counsel's subsequent motion for a recess "of some significant duration" so he could investigate Chapman. The court noted for the record that defense funds for an investigation for Burgess had been authorized since the case began. In response to further questioning, Chapman acknowledged that he had been contacted by a person claiming to be an investigator for Burgess, but he declined to speak to the person. No state agency or member of the victims' family *Page 759 
instructed Chapman not to speak to the person, Chapman said.
The court stated that it would recess and give Burgess the option to question Chapman outside the jury's presence or to defer cross-examination of Chapman until later. Burgess then requested, and the court ordered, Chapman to speak to defense counsel. Later during the trial, the prosecutor questioned Chapman about the matters to which he testified on voir dire. Burgess cross-examined him extensively about the fact that he had failed to disclose the information when he spoke to investigators before trial, and he questioned Chapman about the details of his testimony.
Burgess did not renew his motion for a mistrial or for a continuance after the court announced its resolution of the surprise testimony issue. Therefore, Burgess has no adverse ruling from which to appeal, and nothing was preserved for appellate review. Weaver v. State, 682 So.2d 488 (Ala.Cr.App. 1996). Burgess's objection must now be reviewed pursuant to the plain error rule. Thus, the denial of a continuance or a mistrial can be reversible error here only if the error is so obvious that this court's failure to notice it would perilously affect the fairness or integrity of the proceedings. Ex parte Taylor,666 So.2d 73 (Ala. 1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928,133 L.Ed.2d 856 (1996). Denial of the motion for continuance or a mistrial here did not constitute plain error.
The record reflects that defense counsel knew that Ronald Chapman would be a State's witness, so defense counsel or Burgess's investigator could have investigated Chapman's background and criminal history before trial. After the new information was disclosed, defense counsel was given the unique opportunity to hear the details of Chapman's statement before Chapman testified in front of the jury. Moreover, defense counsel was permitted to cross-examine Chapman about his statement outside the jury's presence. In spite of the foregoing, Burgess argues here that a continuance was necessary because Chapman had been unavailable to him before trial. Chapman's decision not to speak to Burgess's investigator is irrelevant to this issue; even if he had been willing to speak to the investigator before trial, there is no reason to believe that he would not have revealed the information that came as a surprise to all parties on the day of trial. Instead, because Chapman disclosed new information during trial, Burgess secured an order requiring Chapman to speak to defense counsel, so counsel could interview him before he testified. Furthermore, Burgess cross-examined Chapman extensively about his new allegations.
Burgess also claims that Chapman's surprise testimony revealed information that supported a defense of intoxication, about which defense counsel had been unaware and therefore unprepared to present. This is a specious claim, at best. Burgess was certainly well aware of his own drug abuse, and other witnesses testified as to his drug abuse at trial.
In summary, Burgess has failed to establish that the trial court's denial of his motion for a continuance or a mistrial constituted plain error. When the prosecutor discovered the surprise information from Chapman and disclosed it to Burgess and the court, the court exercised its discretion and fashioned a reasonable remedy that provided a recess, allowed Burgess access to Chapman for interview purposes, and permitted Burgess to examine him outside the jury's presence so he could obtain full details and avoid further surprises. The trial court's actions were appropriate under the circumstances.
 VIII
Burgess contends that the trial court erred when it denied two challenges for cause. First, he states that veniremember B.C. fell asleep twice during voir dire, and that he brought this to the court's attention. The judge denied the challenge for cause, stating he too could observe the jurors. Second, Burgess claims that veniremember G.A. should have been excused because, he says, she could not be impartial. Burgess did not challenge veniremember G.A., so this claim must be reviewed for plain error.
"To justify a challenge for cause, there must be a proper statutory ground or *Page 760 
some other matter that imparts absolute bias or favor and leaves nothing to the discretion of the trial court." Ex parte Trawick,698 So.2d 162 (Ala. 1997). A trial court's ruling on a challenge for cause is given great weight; it will not be reversed unless it is clearly erroneous or an abuse of discretion. Ex parteWindsor, 683 So.2d 1042 (Ala. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1438, 137 L.Ed.2d 545 (1997).
The trial court's response to Burgess's challenge of veniremember B.C. suggests that B.C. was not sleeping. Moreover, there is no statutory ground requiring a juror to be excused based on defense counsel's assertion that the juror dozed during voir dire, nor does dozing impart absolute bias requiring dismissal. The trial court did not abuse its discretion when it refused to excuse veniremember B.C.
Burgess's claim that veniremember G.A.'s responses demonstrated that she could not be impartial is not supported by the record. The voir dire responses indicate only that the veniremember would render a verdict according to the evidence and the law. Thus, the trial court did not commit plain error when it did not excuse the veniremember for cause sua sponte.
 IX
Burgess next argues that he was absent from several proceedings, and that his absence requires reversal of his conviction and sentence. The State notes that Burgess did not raise this objection in the court below; it argues that no error occurred or, if error occurred, it was invited.
Rule. 9.1, Ala. R. Crim. P., provides that a defendant has a right to be present at every stage of trial, and that a defendant charged with a capital offense may not waive the right to be present. Alabama courts have held, however, that if a capital defendant is absent from non-critical stages of trial and if his presence would not have benefitted his defense, no error occurs.See Harris v. State, 632 So.2d 503, 510-12 (Ala.Cr.App. 1992),aff'd, 632 So.2d 543 (Ala. 1993), aff'd, 513 U.S. 504,115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995).
Burgess contends that he was absent from two pretrial motion hearings, an in-chambers discussion with counsel for both parties and the victims' family members during voir dire proceedings, and an in-chambers discussion with counsel for both parties about suspending Burgess's telephone privileges until a certain witness testified. Burgess's absence was not objected to, and, in fact, his attorneys stated on the record at the pretrial hearings that his presence was waived. Furthermore, Burgess was absent from only the beginning of the August 3, 1993, pretrial motion hearing when the court and counsel discussed primarily what motions had been filed and when they would be heard. When Burgess arrived in court, the judge noted for the record that defense counsel had agreed that the "housekeeping matters" could be conducted in Burgess's absence.
Burgess has not demonstrated that he suffered any prejudice as a result of his absence from the pretrial hearings. It is obvious that defense counsel believed that Burgess's presence would not be helpful to his defense, because counsel attempted to waive his presence. The Alabama Supreme Court recently observed, "This Court has not held, however, that a defendant has the right to be present at all pretrial proceedings without regard to whether the defendant's absence will prejudice the defendant." Ex parteTrawick, 698 So.2d 162 (Ala. 1997). No plain error occurred as a result of Burgess's absence from one pretrial hearing and a portion of a second hearing.
We have reviewed the portions of the record relating to the in-chambers discussion following defense counsel's motion that the victims' family be removed from courtroom during voir dire proceedings and the inchambers discussion regarding the brief suspension of Burgess's telephone privileges. We note that the record does not clearly indicate that Burgess was, in fact, absent from the discussion regarding the victims' family. Further, we hold that no plain error occurred as a result of Burgess's absence at either in-chambers discussion. The discussions related to minor procedural matters and motions unrelated to Burgess's guilt or innocence, and Burgess's presence would not *Page 761 
have benefited his defense. Burgess has not demonstrated any possibility of prejudice that resulted from his absence. Harrisv. State, supra, 632 So.2d at 510-12.
 X
Burgess next argues that the trial court refused to give several jury instructions that should have been given, and that as a result, the jury could not give full consideration to his defense. Burgess refers to at least 15 guilt-phase jury instructions in his brief, but he addresses only two instructions — those regarding the jury's right to presume that testimony not offered and tests not performed by the State would have been unfavorable to the State. The State correctly argues that Burgess did not object with specificity to the court's refusal to give those two instructions Burgess argues in brief. Therefore, we will review his objections pursuant to the plain error standard. Wilkerson v. State, 686 So.2d 1266, 1274
(Ala.Cr.App. 1996).
Burgess requested that the jury be instructed that if the State failed to call a potential witness, the jury could infer that the witness would have given testimony unfavorable to the State. Burgess also requested that the jury be instructed that if the State failed to conduct "certain tests" or did not perform them properly, the jury could infer that the tests would have yielded results favorable to the defendant. The trial court correctly refused the instructions. The general rule is that a party may not comment unfavorably about the other party's failure to call a witness who was equally available to both sides. Weaver v. State,678 So.2d 260 (Ala.Cr.App. 1995), rev'd on other grounds,678 So.2d 284 (Ala. 1996). Similarly, it would have been wholly improper to allow the jury to infer that had witnesses been called or tests performed, the resulting testimony and test results could have been unfavorable to the prosecution, where all witnesses and evidence were equally available to both parties.See Taylor v. State, 676 N.E.2d 1044 (Ind. 1997) (missing witness instruction not appropriate when witness is available to both parties).
As noted above, Burgess lists many other jury instructions he claims were erroneously refused, yet he offers no discussion in his brief to the court; he merely lists those instructions. We suspect that Burgess's motive for including this list is to avoid possible procedural bars in later proceedings. Whatever the motive, the failure to make arguments violates Rule 28 (a) (5), Ala. R. App. P., which requires argument, reasons, and citation to authority in an appellate brief. Further, as Judge Patterson stated, this practice "smacks of `sandbagging'" that has been condemned by the United States Supreme Court in Murray v.Carrier, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).Haney v. State, 603 So.2d 368, 401 (Ala.Cr.App. 1991), aff'd,603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925,113 S.Ct. 1297, 122 L.Ed.2d 687 (1993).
Because this is a capital case, however, we have reviewed these claims. The trial court's jury charge substantially and fairly instructed the jury on the concepts contained in Burgess's requested instructions that applied in this case. Moreover, the jury instructions given were substantially similar to the pattern jury instructions approved for use in capital cases. No error or plain error occurred as a result of the trial court's refusal to give Burgess's requested written instructions.
 XI
Burgess next argues that his ability to select a fair and impartial jury was impeded by the trial court's failure to grant individual sequestered voir dire, its refusal to allow him to submit a jury questionnaire, and its denial of funds to hire a jury expert or to fund an inquiry into grand jury foreperson selection in Colbert County.
A trial court has much discretion in determining how voir dire is conducted, and a court's decision on how extensive voir dire examination must be will be upheld on appeal unless the court abused its discretion. Ex parte Land, 678 So.2d 224, 241-42
(Ala.), cert. denied, ___ U.S. ___, 117 S.Ct. 308, 136 L.Ed.2d 224
(1996). Like the Alabama Supreme Court in Ex parte Land, we have reviewed the record and found no abuse of *Page 762 
discretion in the denial of individual sequestered voir dire of all jurors or in the denial of his motion to require veniremembers to complete a questionnaire.
We also disagree with Burgess's claim that the trial court erred when it refused to grant funds for a jury expert. Burgess claimed that he needed the expert in order to make "a complete examination into juror bias." To be entitled to funds to pay for an expert, a defendant must show the trial court that there is a reasonable probability that the expert would assist the defense and that the denial of the expert would result in a fundamentally unfair trial. MacEwan v. State, 701 So.2d 66 (Ala.Cr.App. 1997),Dubose v. State, 662 So.2d 1156, 1182 (Ala.Cr.App. 1993), aff'd,662 So.2d 1189 (Ala. 1995) (both citing Ake v. Oklahoma,470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)). Burgess established neither, so the trial court did not err in denying the motion for jury expert funds.
Finally, Burgess claims that the trial court erred when it refused to permit him to use investigative funds previously granted to investigate the historical selection of grand jury forepersons in Colbert County. The State correctly points out that at the motion hearing defense counsel specifically stated that he was not requesting permission to use the investigator to examine "the historical aspect" of the grand jury selection process. Counsel's present claim regarding investigative funds is frivolous. We will not hold the trial court in error for not granting Burgess that which he specifically stated he did not want.
None of Burgess's claims regarding jury selection procedures merit reversal.
 XII
Burgess argues that the trial court erred when it failed to conduct a hearing pursuant to Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He argues that he established a prima facie case of discrimination and that the State should have been required to proffer the reasons for its peremptory challenges of blacks.
After the parties struck the jury, defense counsel objected to the State's exercising 5 of its 19 strikes against black veniremembers. After listing the black veniremembers struck by the State, defense counsel stated, "[W]e would like to pose an objection to the State striking those because we feel the State does not have a race neutral reason for striking those jurors." The prosecutor responded that defense counsel failed to make out a prima facie case of racial discrimination, and the trial court agreed. Defense counsel reiterated that it appeared to him that the strikes were based solely on race. After noting that 60% of the original panel was comprised of black veniremembers and that the jury had 1 white juror and 11 black jurors, the trial court again overruled the motion.
 "In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court set out the components of a prima facie case of racial discrimination in jury selection. In addition to showing that the State used peremptory challenges to remove members of a cognizable group to which he belongs and relying upon the fact that peremptory strikes permit discrimination, a claimant also must show that these facts and any other relevant facts raise an inference that the prosecutor used his strikes in a discriminatory manner. In Ex parte Branch, 526 So.2d 609, 622-623
(Ala. 1987), the Alabama Supreme Court explained that relevant factors could include, but were not limited to, the following: evidence that the jurors shared only the characteristic of their group membership and were heterogeneous in all other respects; a pattern of strikes against black jurors; past conduct of the prosecutor; type and manner of the prosecutor's questions during voir dire, including desultory voir dire; type and manner of questions to the challenged juror, including a lack of questions or meaningful questions; disparate treatment of veniremembers with the same characteristics or type of responses; disparate examination of members of the venire; circumstantial evidence of intent due to the use of most challenges to strike blacks; and the use of *Page 763 
peremptory challenges to dismiss all or most black jurors."
Madison v. State, 718 So.2d 90, 101-02 (Ala.Cr.App. 1997).
Burgess offered no evidence to show that the struck jurors shared only the characteristic of race or that the prosecutor exercised his strikes in a discriminatory manner, "particularly in light of the increased percentage of blacks who served on the jury relative to . . . the initial panel. . . ." Madison, supra.
Burgess has not offered evidence to show that there was a lack of meaningful voir dire directed at black veniremembers, or that black and white veniremembers were treated differently. Nor did Burgess offer evidence that the prosecutor had a history of using peremptory challenges in a manner that discriminated against black veniremembers. Burgess noted only that the State used several of its strikes to remove blacks from the venire. "Without more, we do not find that the number of strikes this prosecutor used to remove [blacks] from the venire is sufficient to establish a prima facie case of racial discrimination." Ex parteTrawick, 698 So.2d 162 (Ala. 1997). "We will not reverse a trial court's Batson ruling unless it is clearly erroneous. Great deference should be accorded to a trial court's Batson ruling."Davis v. State, 718 So.2d 1148 (Ala.Cr.App. 1997) (citations omitted). The trial court's denial of Burgess's Batson motion was not clearly erroneous.
 XIII
Burgess contends that the evidence was insufficient to support his conviction for capital murder. We disagree.
 "In deciding a question of the sufficiency of the evidence, this court must accept as true the evidence introduced by the prosecution, must accord the prosecution all legitimate inferences from that evidence, and must consider that evidence in the light most favorable to the prosecution."
McKinney v. State, 654 So.2d 95, 99 (Ala.Cr.App. 1995) (citations omitted). A conviction will not be set aside on a challenge to the sufficiency of the evidence unless, after allowing all reasonable presumptions in favor of the verdict, the preponderance of the evidence against it is so decided as to convince this court clearly that the verdict was wrong and unjust. Scott v. State, [Ms. CR-94-763, Jan. 17, 1997] ___ So.2d ___ (Ala.Cr.App. 1997).
When viewed in the light most favorable to the State, the evidence tended to show that Burgess beat and strangled Shelia Nnodimele and her two daughters to death, attempted to murder Shelia's son, and then shot himself after leaving a suicide note explaining "the reason for this." Immediately before the murders, Burgess pawned items belonging to the victims, was reported by several witnesses to be agitated and nervous, and lied about where Shelia was in order to explain her absence. Burgess eventually stole a shotgun which he turned against himself. Witnesses at trial provided ample evidence of Burgess's prior abuse and manipulation of Shelia. The only surviving victim, LaRico, was too young to testify, but the State presented overwhelming evidence from which the jury reasonably could have concluded that Burgess murdered Shelia, Latoria, and Alexis by one act or pursuant to one scheme or course of conduct. After reviewing the record in accordance with the standard of review set out above, we find the evidence was sufficient to support the jury's verdict.
 XIV
Burgess argues that the trial court erred when it denied defense counsel's motions for adequate compensation and that the limitations placed by § 15-12-21 (d), Ala. Code 1975, on compensation of counsel representing indigent defendants are unconstitutional. He also contends that those limitations deprive indigent defendants of the effective assistance of counsel. These same arguments have been rejected previously by the appellate courts of this state. See Ex parte Brown, 686 So.2d 409, 422 n. 6 (Ala. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1558,137 L.Ed.2d 705 (1997); Price v. State, [Ms. CR-92-0882, June 20, 1997] ___ So.2d ___ (Ala.Cr.App. 1997); Smith v. State,698 So.2d 189 (Ala.Cr.App. 1996); aff'd, 698 So.2d 219 (Ala. 1997); May v.State, 672 So.2d 1307 (Ala.Cr.App. 1993), writ quashed, *Page 764 672 So.2d 1310 (Ala. 1995). Therefore, the trial court did not err in denying defense counsel's motion for additional compensation.
 XV
Burgess's next argument is that the trial court committed reversible error when it admitted into evidence several photographs of the bloody crime scene because, he says, the photographs were cumulative and inflammatory. The State correctly notes that Burgess did not object at trial to the admission of any of the allegedly prejudicial photographs; therefore, our review is limited by the plain error rule. Moreover, Burgess's failure to object weighs against any finding of prejudice.
 "The courts of this state have repeatedly held that photographs that accurately depict the crime scene and the nature of the victim's wounds are admissible despite the fact that they may be gruesome or cumulative.
 "`[P]hotographs showing external wounds of a deceased victim are admissible even if the evidence is gruesome, cumulative, and relates to undisputed matters. Ex parte Siebert, 555 So.2d 780 (Ala. 1989) [, cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990)]. Moreover, photographs that depict the position and location of a victim's body at the scene of an offense have been held to be proper. Hill v. State, 516 So.2d 876
(Ala.Cr.App. 1987).'
 "Oryang v. State, 642 So.2d 979, 989
(Ala.Cr.App. 1993)."
Land v. State, 678 So.2d 201, 207-08 (Ala.Cr.App. 1995), aff'd,678 So.2d 224 (Ala.), cert. denied, ___ U.S. ___, 117 S.Ct. 308,136 L.Ed.2d 224 (1996). The admission of photographic evidence lies within the sound discretion of the trial court. Ex parteSiebert, 555 So.2d 780, 783-84 (Ala. 1989), cert. denied,497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990).
The photographs now complained of portray the crime scene and the victims' bodies when they were discovered; thus, all are relevant. That the photographs are gruesome and may have aroused the passions of the jurors is a direct result of the fact that the victims were murdered in a brutal, gruesome manner. No plain error occurred when the trial court admitted the photographs into evidence.
 XVI
Burgess next contends that several statements he alleges are hearsay were erroneously admitted at trial, and that the admission of these statements violated his right to confront witnesses against him. He acknowledges that curative instructions were given in some instances, but he argues that these instructions could not erase the prejudicial matter from the jurors minds.
Burgess lists six instances during the trial in which, he says, hearsay testimony was improperly presented to the jury. One of the transcript pages cited in his brief to this court contains no hearsay. Two instances of alleged hearsay were not objected to at trial and are reviewable now only for plain error. We find no plain error in the admission of the testimony because neither statement was hearsay.
Burgess objected at trial to the remaining instances of alleged hearsay; the trial court sustained the objections and promptly instructed the jury to disregard the responses. Burgess made no additional objections or motions. Because the trial court granted Burgess the relief he requested, he has no adverse ruling from which to appeal. Sotto v. State, 701 So.2d 309 (Ala.Cr.App. 1997). Moreover, we find that the curative instructions were prompt and were sufficient to vitiate any possible prejudice from the alleged hearsay testimony.
No error or plain error exists with regard to any of the alleged hearsay admitted at Burgess's trial.
 XVII
Burgess argues that the trial court "interfered with defense counsel's ability to make a complete record." He claims specifically that the court erred when it denied his motion for an order compelling the prosecutor to provide information he obtained from the district attorney's office about the *Page 765 
prospective jurors. Burgess contends that, because he was denied access to this information, this court cannot meaningfully review any issues arising out of voir dire, such as excusals for cause.
This court has previously held that arrest and conviction records of potential jurors are not discoverable under Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that a trial court does not err when it denies a defendant's motion to discover such information. Kelley v. State,602 So.2d 473, 476-78 (Ala.Cr.App. 1992), and cases cited therein.See also Grimsley v. State, 678 So.2d 1197 (Ala.Cr.App. 1996) (same holding).
 PENALTY PHASE XVIII
Burgess contends that the trial court erred at sentencing when it considered numerous victim impact statements, because the statements contained comments from the victims' family members about the punishment Burgess should receive and their opinions about his character and the crime. He also argues that the trial court erred when it considered the portions of a victim impact report that detailed Burgess's actions toward the victims before the murders. The State contends that the record does not indicate that the trial court considered the victim impact reports in determining the proper sentence. The State also argues that no error would have occurred even if the court considered details of Burgess's behavior toward the victims before the murders.
Burgess did not object at trial to the inclusion of the victim impact statements in the presentence report, nor did he object to the trial court's alleged consideration of them. We note, however, that when the court asked the parties whether they had any comments on the presentence report, Burgess brought several other matters to the court's attention. His failure to object on the grounds now raised requires us to review the allegations for plain error to determine whether they constitute particularly egregious errors that seriously affected the fairness and integrity of the judicial proceedings. Rule 45A, Ala. R.Crim. P.;Kuenzel v. State., 577 So.2d 474, 481-82 (Ala.Cr.App. 1990),aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886,112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
The presentence report consists of 13 pages of information about Burgess; slightly more than 4 pages are the single-spaced, typewritten report of Burgess's life story as he related it to the probation officer who interviewed him. Also included with the presentence report were the victims' impact reports completed by Shelia Nnodimele's parents and sister and an unidentified person regarding the injuries and monetary losses suffered. The victim impact form specifically requested the victim's opinion of the appropriate punishment and an "impact statement." Along with the completed forms, the victims submitted handwritten statements addressing punishment and the impact of the murders. The trial court's sentencing order does not refer to the victim impact statements; the court's fact findings and its discussion of the aggravating and mitigating circumstances refer repeatedly to the evidence presented at trial. The court also made specific references to portions of the presentence report completed by the probation and parole officer. The record does not indicate that the court considered the victim impact statements in sentencing Burgess, nor does it indicate that it based Burgess's sentence, even in part, on the statements.
Statements regarding the impact of the crime on the victim are properly before a trial court at sentencing. Payne v. Tennessee,501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). However, the United States Supreme Court did not overrule the prohibition it imposed in Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529,96 L.Ed.2d 440 (1987), against considering at the sentencing phase at a capital murder trial, victim impact evidence regarding the characterization of the crime, the defendant, or the appropriate punishment. We find no plain error here because we find no evidence that the statements were considered by the court at sentencing.
Ex parte Rieber, 663 So.2d 999 (Ala. 1995), cert. denied,516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1996) presented facts substantially *Page 766 
similar to those now before us. In the victim impact statement, the deceased's husband expressed his opinions about the defendant, the crime, and the appropriate sentence. The Alabama Supreme Court stated that a new sentence hearing is not required in every death penalty case in which a victim impact statement appears in the presentence report. The court also noted, as we have noted here, that the record did not indicate that the trial court considered the victim impact statement in sentencing the victim, and it found no reversible error. 663 So.2d at 1006-07.Ex parte Land, 678 So.2d 224 (Ala.), cert. denied, ___ U.S. ___,117 S.Ct. 308, 136 L.Ed.2d 224 (1996), presented similar facts. In that case, the trial judge received and read several letters from the victim's family and friends, expressing their opinions about the defendant, the crime, and the appropriate punishment. The Alabama Supreme Court found no plain error, however, because the record established that the court did not consider the letters in determining the defendant's sentence. See also Arthurv. State, 711 So.2d 1031 (Ala.Cr.App. 1996) (references in presentence report to family's statements regarding impact of murder and to appropriate sentence were not plain error).
As was true in all of the foregoing cases, there is no indication in this case that the victim impact statements were considered by the court in determining the appellant's sentence. To the contrary, the record in this case, like the record in Ex parte Land, demonstrates that the trial court determined the sentence in the manner established by §§ 13A-5-47 to -52, Ala. Code 1975, because the court repeatedly referenced the Code sections in its findings. Based on the holdings in the above-cited cases, and on the record presented, we find no plain error in the trial court's actions.
 XIX
Burgess argues that the trial court erred in finding the §13A-5-49 (1), Ala. Code 1975, aggravating circumstance because the finding was based on his conviction for a violation of a municipal ordinance. He further asserts that such a minor offense could not possibly have been contemplated by the legislature as an aggravating factor for capital sentencing purposes. Burgess failed to raise this issue at trial, so we must review it now under the plain error rule.
Section 13A-5-49, Ala. Code 1975, lists as an aggravating circumstance, "The capital offense was committed by a person under sentence of imprisonment." Section 13A-5-39 (7), Ala. Code 1975, provides:
 "(7) Under Sentence of Imprisonment. As used in Section 13A-5-49 (1), the term means while serving a term of imprisonment, while under suspended sentence, while on probation or parole, or while on work release, furlough, escape, or any other type of release or freedom while or after serving a term of imprisonment, other than unconditional release and freedom after expiration of the term of sentence."
Section 13A-5-39 (7) does not exclude from its scope any category of criminal violation. To the contrary, it specifies that it excludes only those defendants who formerly were under a sentence of imprisonment but who had been granted "unconditional release and freedom after expiration of the term of sentence."
Burgess argues that the legislature must not have intended all criminal violations and sentences to be included in the provision of the statute, but that argument fails. Two of the eight statutory aggravating circumstances impose such limitations; the second aggravating circumstance applies only to those convicted of "another capital offense or a felony involving the use or threat of violence," and the fourth aggravating circumstance applies only if the killing occurred during a rape, robbery, burglary, or kidnapping. Section 13A-5-49 (2) and (4), Ala. Code 1975. The fact that the legislature limited application of these aggravating circumstances to certain crimes and excluded others demonstrates that it did not also intend to limit the application of the second aggravating circumstance. See Ex parte T.B.,698 So.2d 127 (Ala. 1997) (when statute enumerates certain things on which it is to operate, it must be construed as excluding all things not enumerated). Burgess's suspended sentence for a municipal code violation was *Page 767 
properly placed before the jury and the judge for consideration as a statutory aggravating circumstance, and no error occurred when the judge found it to exist. The weight it was accorded, if any, was for the sentencers' discretion. We cannot and will not defeat the obvious intent of the legislature in this case.
To the extent Burgess argues that the use of his suspended sentence for the municipal code violation to support the aggravating circumstance was unconstitutional, we disagree. We review the argument under the plain error rule because it was not raised below.
The United States Supreme Court has repeatedly held that a capital sentencing scheme must minimize the risk of arbitrary and capricious sentences by directing and limiting the discretion of the sentencer. Arave v. Creech, 507 U.S. 463, 470,113 S.Ct. 1534, 1540, 123 L.Ed.2d 188 (1993); Gregg v. Georgia,428 U.S. 153, 190, 96 S.Ct. 2909, 2933, 49 L.Ed.2d 859 (1976). The scheme must provide a meaningful basis for distinguishing those cases in which the death penalty is applied from the greater number of cases in which it is not applied. Furman v. Georgia,408 U.S. 238, 313, 92 S.Ct. 2726, 2764, 33 L.Ed.2d 346 (1972) (White, J., concurring). Alabama's capital statute has been upheld as satisfying these standards. Beck v. State, 396 So.2d 645 (Ala. 1981).
Aggravating circumstances that render a defendant eligible for the death penalty in a homicide case must meet two requirements: the circumstance must apply only to a subclass of murder defendants and it must not be unconstitutionally vague. Tuilaepav. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 2635,129 L.Ed.2d 750 (1994). The aggravating circumstance challenged here does not violate Burgess's constitutional rights. This statutory aggravating circumstance is directed at those defendants who previously violated the law and who were under a sentence of imprisonment when they committed capital murder. A "backward-looking and a forward-looking inquiry" into a defendant's criminal activity is a permissible part of the sentencing process, the United States Supreme Court has held, and the states have "considerable latitude" in guiding the sentencing body's decision on this factor. Id. at 977, 114 S.Ct. at 2637. So, too, we now hold, a sentencer may properly consider as an aggravating circumstance the fact that a capital defendant is currently under a term of imprisonment for a violation of a municipal code. That determination, like the determination regarding prior criminal history, is simply a matter of historical fact; the sentencer is free to assign it great weight or no weight at all, just as it does the mitigating and other aggravating circumstances it finds to exist. Application of the aggravating circumstance here does not violate any constitutional principles.
We note, moreover, that Burgess was under a sentence of imprisonment following his conviction for harassing communications, which involved Burgess's illegal communications to the mother of one of the decedents, Shelia Nnodimele. That Burgess was under a sentence of imprisonment for this violation, for less than one year after pleading guilty to the charge before he murdered three members of the first victim's family and attempted to murder a fourth member demonstrates the relevance of this aggravating circumstance.
In sum, we find no plain error on this issue.
 XX
Burgess argues that the trial court refused to consider nonstatutory mitigating circumstances — his alleged mood disorder, the fact that his mother was mentally ill, his low intelligence, his allegedly dysfunctional home during his childhood, his drug dependence, and the fact that violence had always been in his life. The State argues that the sentencing order demonstrates that the court considered the evidence but that it did not find it to be mitigating. We agree with the State.
In the sentencing order, the trial court discussed evidence regarding Burgess's crack cocaine use and his mother's mental illness, but did not find them to be mitigating. The court also noted evidence of Burgess's mood disorder, his low intelligence, his dysfunctional home life, and the fact that *Page 768 
violence had always existed in Burgess's life. The trial court found Burgess's remorse and the jury's recommended sentence of life imprisonment without parole to be nonstatutory mitigating circumstances. It is clear that the trial court considered the nonstatutory mitigation presented by Burgess, but found most of the evidence not to be mitigating.
A trial court is required to consider all evidence a defendant offers as mitigation. Lockett v. Ohio, 438 U.S. 586,98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Whether the proffered evidence is found to mitigate the crime, however, is a decision that rests in the trial court's discretion. See Ex parte Trawick, 698 So.2d 162
(Ala. 1997). Although it did not cite § 13A-5-52, Ala. Code 1975, the nonstatutory mitigation provision, it is clear that the trial court here considered all of the evidence and found some nonstatutory mitigation, so Burgess's allegation of error has no merit.
 XXI
Burgess argues that his sentence must be reversed because the trial court based his death sentence "upon a broad and freewheeling collection of nonstatutory aggravating circumstances." The State disputes this claim, and asserts that the sentencing order demonstrates that the court found two statutory aggravating factors. The State is correct.
Section 13A-5-47 (d), Ala. Code 1975, provides that the trial court shall enter specific findings regarding the existence of each statutory aggravating circumstance. The trial court here complied. The court found that § 13A-5-49-(1) applied because Burgess was under a sentence of imprisonment, and that § 13A-5-49-(2) applied because Burgess had previously been convicted of a felony involving the use or threat of violence to the person. When the court weighed the aggravating and mitigating circumstances mandated by § 13A-5-48, the court again listed the two statutory aggravating circumstances noted above, and no others. The evidence Burgess lists in his brief was referred to in the sentencing order, but only in the court's fact findings. Therefore, Burgess's claim that his death sentence was based on a freewheeling collection of nonstatutory aggravating circumstances is unsupported by the record.
 XXII
Burgess argues that the trial court violated his constitutional rights by instructing the jury on only four of the seven statutory mitigating circumstances, thus limiting the jury's consideration of all factors that would support a verdict of life imprisonment without parole. Burgess did not raise this claim at trial, and this failure to object weighs against any claim of prejudice.
The jury returned a verdict of life imprisonment without parole, and the trial court considered the jury's verdict to be a nonstatutory mitigating circumstance. Therefore, even if error occurred, it was harmless. Giles v. State, 632 So.2d 568
(Ala.Cr.App. 1992), aff'd, 632 So.2d 577 (Ala. 1993), cert. denied,512 U.S. 1213, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994). Moreover, there is no requirement that the entire list of statutory mitigating circumstances be read to a jury where no evidence supports each circumstance. Holladay v. State, 629 So.2d 673, 687
(Ala.Cr.App. 1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208,127 L.Ed.2d 555 (1994). Defense counsel argued to the jury that 4 of the 7 statutory mitigating circumstances applied, and there was evidence that warranted instructing the jury on those four statutory circumstances only. In addition, the trial court instructed the jury on nonstatutory mitigation.
For all of the foregoing reasons, Burgess's claim entitles him to no relief.
 XXIII
Burgess contends that the trial court erroneously refused several jury instructions at the penalty phase. In a footnote, Burgess lists all of the instructions that the trial court refused, but he discusses in brief only two instructions — one regarding the consideration of mercy and one regarding residual doubt. Burgess did not make a specific objection at trial to the court's failure to give these instructions, so the claim is now reviewable only to determine whether the failure *Page 769 
to instruct the jury constituted plain error. We hold that it did not.
First, because the jury returned a verdict of life imprisonment without parole, any error that might have occurred was harmless.Giles v. State, 632 So.2d 568 (Ala.Cr.App. 1992), aff'd,632 So.2d 577 (Ala. 1993), cert. denied, 512 U.S. 1213,114 S.Ct. 2694, 129 L.Ed.2d 825 (1994). Second, Alabama courts have held that capital defendants are not entitled to jury instructions on mercy and residual doubt. Boyd v. State, 715 So.2d 825
(Ala.Cr.App. 1997); Myers v. State, 699 So.2d 1281 (Ala.Cr.App. 1996), aff'd, 699 So.2d 1285 (Ala. 1997). Burgess is entitled to no relief on this claim of error.
 XIV
Burgess next argues that Alabama's capital murder statute is unconstitutional on its face and as applied to him because it permits judicial override of a jury's advisory verdict of life imprisonment without parole. Burgess claims that § 13A-5-47, Ala. Code 1975, permits standardless overrides, disregards juries' roles in sentencing, and permits the arbitrary imposition of the death sentence. Burgess did not object to the override provision at trial.
Burgess's claims have been rejected by the United States Supreme Court. Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031,130 L.Ed.2d 1004 (1995). See also, Madison v. State, 718 So.2d 90
(Ala.Cr.App. 1997); Scott v. State, [Ms. CR-94-763, Jan. 17, 1997] ___ So.2d ___(Ala.Cr.App. 1997) (both citing Harris and rejecting claims regarding judicial override). Therefore, Burgess's arguments regarding the unconstitutionality of the statute are without support in the law. We defer discussion of the propriety of judicial override in this case, and will address it in our statutorily mandated review of Burgess's sentence.
 XXV
Finally, Burgess contends that his sentence must be reversed because the § 13A-5-49 (2), Ala. Code 1975, aggravating circumstance (that he had previously been convicted of a violent felony) was erroneously found to exist in his case. He claims that his previous conviction in Mississippi for kidnapping should not have been used to prove the aggravating circumstance because the indictment was invalid, and that rendered the conviction void. The State notes that Burgess did not raise this objection at trial, so the claim is now reviewable only to determine if plain error exists. The State also argues that Burgess cannot attack his conviction in this proceeding, because the proper forum for such an attack is in the court where he was convicted. We agree with the State.
We have held that a defendant at his sentencing hearing cannot attack the validity of a prior conviction used to enhance his sentence as a habitual felony offender. E.g., James v. State,681 So.2d 269, 269-71 (Ala.Cr.App. 1996); McHarris v. State,623 So.2d 400, 400-01 (Ala.Cr.App. 1993). That rule is equally applicable here. Burgess cannot attack the validity of his Mississippi convictions in Alabama; those convictions are subject to challenge in the Mississippi court that entered the convictions.
Therefore, we find no plain error in the trial court's admission of the prior convictions and the application of the § 13A-5-49 (2) aggravating circumstance based on those convictions.
 XXVI
In accordance with the requirements of § 13A-5-53, Ala. Code 1975, we have reviewed the record of proceedings for any error that adversely affects Burgess's rights, and we have found none. We have also determined that the trial court properly found two aggravating circumstances: (1) that the capital offense was committed while Burgess was under a sentence of imprisonment; and (2) that Burgess had previously been convicted of a felony involving the use or threat of violence. The trial court found that the appellant's age was a statutory mitigating circumstance. The trial court found the jury's recommended sentence of life imprisonment without parole and Burgess's remorse to be nonstatutory mitigating circumstances. The court found no other mitigating circumstances to exist. The evidence supports the trial court's findings *Page 770 
with regard to the aggravating and mitigating circumstances.
In accordance with § 13A-5-53 (b), we have reviewed the propriety of the death sentence. The trial court found that the aggravating factors outweighed the mitigating factors and wrote, "Killing three human beings, two of whom were children, intentionally and deliberately, when taken together with defendant's previous conviction of a felony involving threats of violence to at least one child under 14 years of age, evidences a total and complete disregard for the value of human life." There is no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. Our independent weighing of the aggravating and mitigating circumstances leads us to conclude that the trial court's sentence of death was the appropriate sentence in this case. We also find that the sentence of death is not excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Williams v. State,710 So.2d 1276 (Ala.Cr.App. 1996).
For all of the foregoing reasons, we affirm the trial court's judgment.
AFFIRMED.
[1] The murders occurred in Colbert County, but venue was changed to Jefferson County due to excessive pretrial publicity.
[2] Burgess did not claim below that the trial court had discriminated against whites.
[3] The trial court's selection process in this case, which was described as an attempt at "affirmative action," was well intentioned, but was, we believe, susceptible to abuse and obviously not race-neutral.
[4] The object was not identified for the record, but from the context of the argument, it appears the object in question was the bumper jack assembly, post.
All the Judges concur.*
* Judge Jean Brown and Judge Pamela Baschab were not members of this court when the oral argument was held. They have listened to tapes of that argument.